MOORE et ux. v. CAMPBELL et ux.

No. 10101.

Court of Civil Appeals of Texas. Austin.

Jan. 28, 1953.

Rehearing Denied Feb. 18, 1953.

Alsup & Thomas, J. W. Thomas, Jr., Temple, for appellants.

Jarrard Secrest, Temple, for appellees.

ARCHER, Chief Justice.

This is a boundary dispute between Robert F. Moore and wife, plaintiffs, owners of Lots Nos. 1, 2 and 3, in Block No. 4, E. E. Nettles Addition to Temple, Texas, and Lionel L. Campbell and wife, defendants, the owners of Lots Nos. 9, 10 and all but the North 30 feet of Lot No. 8 of the same block, and involves the proper location of the back lines of the lots which have a common line as a boundary for a distance of 129.5 feet.

The Nettles Addition was surveyed and laid out by Fred Williamson, licensed State Land Surveyor, March 15, 1946, dedicated by E. E. Nettles and wife and duly approved by the Board of Commissioners of the City of Temple by resolution passed March 5, 1946.

The contention of the plaintiffs, appellants herein, is that their back line is established and marked by a hedge of shrubs, located on the ground, and as located by surveyor Dykes; that of the defendants, appellees herein, is that the proper location of the back lines is marked by stakes and lies west of the hedge and is as located by surveyors Bengel and Uran.

This case was tried before the court without the aid of a jury and judgment was rendered in favor of the defendants and decreed that the west boundary line of defendants' property is established by a line fixed by William C. Bengel, as lying west of a brick fence, running roughly parallel with said line, and being located by a call bearings and distances from a point existing in the intersection of the center lines of Thirteenth Street and Thompson Avenue produced along the north line of the Brindley-Longmire tract as this point was located by Bengel and marked as a " 'nail and bottle cap' as follows: * * *" (Then follows field notes as are set out in the findings of fact.)

The court made findings of fact and conclusions of law as follows:

"1. That the west boundary line of defendant's property, being the west line of Lots 9 and 10 and the west line of Lot 8, except for the north 30 feet thereof, all in Block 4 of the E. E. Nettles Addition to the City of Temple, Texas, is established as lying west of a brick fence, now standing, running roughly parallel with said line, about seven inches and eighteen inches at its, the said fence's, northern and southern termini respectively, and being located by call bearing and distance from a point existing in the intersection of the center lines of 13th Street and Thompson Avenue produced along the north line of the Brindley-Longmire tract, as this point was located by William C. Bengel and marked as a 'nail and bottle cap' as follows:

"Thence south for 29 feet, thence 426 feet to the intersection of the center lines of Shell Avenue and Thirteenth Street;

"Thence 231.9 feet to the intersection of the center lines of Royal Avenue and 13th Street on a deflection to that point of 77 degrees and 30 minutes;

"Thence along the center line of Royal Avenue 130.6 feet to its intersection with the produced west line of Lots 11 and 13 of Block 4 of the E. E. Nettles Addition to the City of Temple, Texas;

"Thence northward on an angle of 112 degrees and 30 minutes with the center line of Royal Avenue 195 feet to the southwest corner of Lot 10 in Block 4 of the E. E. Nettles Addition to the City of Temple, Texas;

"Thence on a deflection angle of 13 degrees and 30 minutes 129.5 feet to

the northern terminus of the west line of defendant's property, being a point thirty feet south of the northwest corner of Lot 8 of Block 4 of the E. E. Nettles Addition to the City of Temple, Texas, the line between the last two points being the western boundary of the defendant's property.

"2. That the brick fence now standing and running roughly parallel with the west boundary line of defendant's property is not an encroachment upon plaintiffs' lands.

"Conclusions of Law

"1. That plaintiffs take nothing against defendants by virtue of their petition on file herein and shall pay all costs of this proceeding.

"Wesley Dice,
"Judge Presiding"

The appeal is before this Court on eleven points, but the first six are grouped and briefed together and are:

"Point 1

"A judgment based on hearsay and conclusions, the basic underlying facts of which are not disclosed, cannot be supported against evidence of a boundary placement disregarding the fewest number of calls possible in a plat embodying conflicting calls.

"Point 2

"Testimony of a survey based on unidentified stakes not mentioned in the plat is without probative force.

"Point 3

"Testimony of a surveyor who fails to disclose data on which a conclusion as to boundary location is based is without probative force.

"Point 4

"As a matter of law, the evidence shows boundary encroachment, there being no conflict in it.

"Point 5

"A judgment against the overwhelming weight of the evidence cannot be supported.

"Point 6

"Closure in case of conflicting calls will be effected by recognizing line ignoring the fewest number of calls and reconciling the greatest number.

"Point 7

"Mandatory injunction will remove a trespass of lasting type when it is committed after litigation is instituted.

"Point 8

"Testimony of location of unidentified and undesignated stakes is inadmissible as hearsay.

"Point 9

"Evidence of declarations of a surveyor engaged in a survey are admissible as res gestae.

"Point 10

"Evidence of prior inconsistent statement of a surveyor is admissible for impeachment.

"Point 11

"Failure to file requested additional findings of fact and conclusions of law to that providing that one party prevail is reversible error."

The briefs of the appellants are somewhat long but are very complete in presenting their view. We have had some difficulty in separating the several points and we shall dispose of the appeal along the general effect of the assignments and determine if the judgment of the court finds support in the record, based on substantial evidence.

The record in the case is long. The statement of facts contains 253 pages in which 13 witnesses testified, and there are various exhibits, among which are five maps of the area from and about which much testimony was elicited and on which many marks, figures and distances were added.

The original plat of the Nettles Addition gives the location and size of the several lots and we have reproduced Block No. 4 with adjoining streets and avenues on which there are in addition some distances and figures given by witnesses:

Albert C. Dykes, Jr., an engineer, called as a witness by plaintiffs testified in detail as to his work in making the survey. Dykes began at a point on 7th Street, thence west along the center line of Thompson Avenue until the course of the Avenue changed, and continued on west to the N. W. corner of Lot No. 12 in Block No. 1;

Thence down the west line the called distance on the pat, 170 feet on Lot 12, 60 feet across Thompson Avenue, 97.4 feet along No. 1, 70 feet along Lot 2, and 70 feet along Lot 3, in Block No. 4;

Thence East 172.5 feet, but ran into the line even with the wall before he reached that point.

He then testified as to other and farther measurements and corners and as to slight changes he made in course and testified that:

"Q. Well, now as you have been on the ground out there of course, and you have seen the brick fence that runs along the east line of Mr. Moore's property, is that correct? A. That is correct.

"Q. Taking the western side of that or the western side of the wall of Mr. Campbell's line, I mean Mr. Campbell's fence, we will identify that as being Mr. Campbell's fence, would you say that that fence is located within Lots 1, 2 and 3, or on the land called for in Lots 10, 9 and a part of 8? A. The east line of Lots 1, 2 and 3 would fall inside the west line of the fence, the west face of the fence.

"Q. In other words, then, you consider that the fence is on Mr. Moore's property? A. I do.

"Q. And for what distance is the encroachment there would you say according to your final computations? A. At the southeast corner of Lot 3 the encroachment is 2.2 feet and at the north end of the wall it is 1.9 feet."

*       *       *       *       *       *

C. H. Uran, a licensed State Land Surveyor, called as a witness by defendants, testified as to the work he did in making a survey of the premises, and that he found a wooden one by two pine stake with a tack mark in the Waco road at the southwest corner of Lot No. 3, Block 4, and proceeded south and across Royal Avenue, and found three stakes along the south side of Royal Avenue in Block No. 7, one at the northeast corner of Lot No. 3 and the northwest corner of Lot No. 4, and another at the beginning of the radius at the intersection of 13th Street and Royal; that all of these stakes had tack marks; that from the latter stake

"A. I proceeded westward from Lot 4. The stakes were tack marked as I said before and in line and the proper distance apart, that is 52.25 feet and 71.25 feet. I continued westward 71.25 feet across the north end of Lot 2 in Block 7, and the same distance across Lot 1 in Block 7, and I began digging for a stake at the intersection of the old Waco Road and Royal. I did not find any stakes and I turned the angle called for, 87.25, and I went across Royal Avenue 60 feet to the southeast corner of Lot 5 in Block 4. There is a large terrace built on that lot, the front yard has been terraced up high, and we didn't want to dig up the yard too much and we didn't do too much digging there. Then I turned the compensating angle of—the complimentary angle of 82 degrees and 25 minutes, which is 92 degrees and 45 minutes, and I proceeded east on the north side of Royal Avenue 90 feet and 90 feet, there are two lots there, Lot 5 and Lot 12, and each one has a frontage of 90 feet on Royal Avenue. I set a point at the southeast corner of Lot 12 and the southwest corner of Lot 13 in Block 4.

*       *       *       *       *       *

"Q. Now, Mr. Uran, getting back to the point where you were between Lots 12 and 13 in Block 4. Now, where did you go from there? A. I turned a right angle off of the north line of Royal Avenue and I went up between, on the lot line between Lots 12 and 13 in Block 4 95 feet. We were running along about a foot or a foot and a half west of a concrete driveway. I did not find anything at that point and we continued on the same course 70 more

feet between Lots 11 and Lots 4 in Block 4 and I set a pin, a chaining pin, at that point with a transit. This was all done with a transit and a tape. I was at that time several inches from a stake that had been pointed out to me as being—

\*     \*     \*     \*     \*     \*

"The Court: Describe what you found but not what had been pointed out to you. A. It was a one inch by two inch pine stake with a tack mark in it.

\*     \*     \*     \*     \*     \*

"Q. Mr. Uran, we have got to go back now to the corner which is the southeast corner of Lot 3, and the southwest corner of Lot 10 in Block 4. In other words, it is the common corner between Moore and Campbell. A. Yes, sir.

"Q. Now, you were there? A. Yes, sir.

"Q. You have testified that you have gotten there by measuring from certain stakes that you found according to the platted distances? A. Yes, sir.

"Q. What did you see on the ground when you got there? A. I found a one by two pine stake, I believe it was pine, driven in the ground probably—it might have been about an inch or an inch and a half above the surface of the ground and it had an engineer's tack in the top of it.

"Q. How far were you from that stake in your point that you had measured? A. Several inches."

A measurement was then made to the southeast corner of Lot No. 3 in Block No. 4 a distance of 172½ feet. That a stake for the southeast corner of Lot No. 2 was found, and another distance of 116 feet to the northeast corner of Lot No. 1, and found a stake.

Mr. Uran testified that the brick wall was on the east side by approximately six inches of the property line.

William C. Bengel, a civil engineer and former City Engineer for Temple, by deposition testified that he was familiar with the Nettles Addition and had done surveying work therein; that he used as his base lines points established in North 7th Street, all such points having been proven and accepted for all work west from 7th Street, and in answer to a question, stated:

"A. We carried in a point through Thompson Avenue to the west and checked flat onto an existing nail in the pavement in the corner of 13th Street and Thompson. A survey line was carried in Royal Avenue and a point established there. The line was run down from 13th and Thompson southward to Royal Avenue and checked. The line extended westward from Royal to the dividing line between lots 12 and 13, known as the Paul Boyd property and the Maedgen property, and the line extended northward to establish the southwest corner of the Lionel Campbell property.

"Q. I see, we have followed you— A. Well, I am not through. Do you want me to carry on?

"Q. All right, go ahead. A. Continuing on from the southwest corner of the Lionel Campbell property to the northwest corner, angles were turned and located on the front corner from each of the two rear corners and a line extended northward between the Robert Moore property and the A. P. Brashear property to a point in the street on Thompson Avenue, which had been extended down from the corner of 13th and Thompson and checked. This complete survey was worked out on traverse sheets, balanced out, and completely checked."

Mr. Bengel testified that the hedge of shrubbery was located east of the Campbell lot line as surveyed by about 2½ to 4 feet and was not in straight lines and the newly erected brick wall was east of the existing property lines and situated entirely on the Campbell property.

We believe that the trial court's judgment is supported by the record and that the findings of fact are in accord with the testimony of surveyors Bengel and Uran.

■ The primary purpose in all boundary cases is to locate the survey as it was intended to be located on the ground by the original surveyor. Carter & Bro. v. Collins, Tex.Civ.App., 192 S.W. 316, error ref.

The nail and bottle cap point at the intersection of 13th Street and Thompson Avenue is not in dispute, nor are the other points southward in 13th Street including the point in Royal Avenue.

In the case of Taylor v. Higgins Oil & Fuel Co., 2 S.W.2d 288, error dism., the Court of Civil Appeals of Texas, Beaumont, opinion by Justice Walker, there is a discussion of the Rule of boundary construction, and of other rules to be observed in locating boundary lines, and many cases and authorities are cited which we believe to be applicable in this case and to which we refer.

The trial court heard the testimony of the witnesses and viewed the several exhibits and rejected that of the appellant and accepted that of the appellees and found all points which had support in the record in favor of the judgment.

Rolison v. Puckett, 145 Tex. 366, 198 S.W.2d 74; Ball v. Yowell, Tex.Civ.App., 222 S.W.2d 277, error ref. n. r. e.; Wrather v. Humble Oil & Refining Co., 147 Tex. 144, 214 S.W.2d 112; Flint v. Knox, 1943, Tex.Civ.App., 173 S.W.2d 214 (Gal. error ref., w. o. m.).

The appellants complain of the failure of the court to file a number of additional findings of fact and conclusions of law such as the ultimate issues upon which the judgment was based; if there was any affirmative defense that barred recovery; as to any conflicts in any of the calls, and finally to set out the rules of factual construction which were applied by the court in the determination of final judgment and if any force was attached to the testimony of witness Uran.

■ We believe that the findings of fact as made by the court covered the material and controlling issues raised, and the court was not required to make findings on other evidentiary matters or on every controverted fact, and that was not reversible error. Wade v. Taylor, Tex.Civ.App., 228 S.W.2d 922.

The assignments are overruled.

The judgment of the trial court is affirmed.

Affirmed.