Robert Eugene HOUSSIERE, Appellant,

v.

Mary Jane HOUSSIERE, Appellee.

No. 14372.

Court of Civil Appeals of Texas.

San Antonio.

March 31, 1965.

Rehearing Denied April 28, 1965.

Robert E. Houssiere, Seguin, Horace Duncan, Gonzales, James D. Kennedy, San Antonio, for appellant.

Collins B. Cook, San Antonio, Denver E. Perkins, Gonzales, for appellee.

BARROW, Justice.

This is an appeal by Robert Eugene Houssiere from a decree of divorce granted Mary Jane Houssiere after a non-jury trial. Appellant complains primarily of the granting of the divorce, asserting the evidence is not full and satisfactory that he was guilty of excesses, cruel treatment and outrages toward appellee, of such a nature as to render their living together insupportable, or that his conduct was studied, wilful and deliberate and intended to cause her mental distress, pain and suffering. He further asserts that the testimony of appellee was not corroborated and, in any event, under the uncontradicted evidence, appellee had condoned all acts complained of by her.

The parties were married on May 31, 1950, separated temporarily from October 14 to October 20, 1963, and then separated finally about January 15, 1964. Four children were born of this marriage, but appellee's right to their custody was not disputed. Findings of fact were filed by the trial court, which entitled appellee to a divorce under Subd. 1 of Art. 4629, Vernon's Ann.Civ.Stats.[1]

■ Appellant complains that these findings are too general and the trial court erred in not specifying the particular acts and conduct of appellant which constituted excesses, cruel treatment and outrages. It is seen, however, that the trial court made findings on all ultimate issues of fact necessary to establish this ground for divorce.

Howell v. Howell, 147 Tex. 14, 210 S.W. 2d 978. It was not necessary for the trial court to make specific findings on evidentiary issues as requested by appellant. Moore v. Campbell, Tex.Civ.App., 254 S.W.2d 1018, wr. ref., n. r. e.; 4 McDonald, Texas Civil Practice, 1289.

■ It is the duty of this Court to examine the entire record and to determine whether the evidence is full and satisfactory and of a nature to justify and support the decree granting the divorce. In doing so, however, we may not pass on the credibility of the witnesses. Barrett v. Barrett, Tex.Civ.App., 368 S.W.2d 709; Christen v. Christen, Tex.Civ.App., 333 S.W.2d 472; Robinson v. Robinson, Tex. Civ.App., 235 S.W.2d 228; Mortensen v. Mortensen, Tex.Civ.App., 186 S.W.2d 297. This Court can not lose sight of the fact that the trial court alone had the vantage of having the personal presence of the parties before him and the opportunity to observe their demeanor and pass upon their credibility. Dickey v. Dickey, Tex.Civ. App., 290 S.W.2d 933.

Appellee testified that appellant was very domineering and treated his family as chattels. He frequently quoted to her a French phrase meaning that the husband is master of the house and responsible only to God. Difficulty was encountered between the couple concerning the discipline of the children, particularly the eldest son. Appellant was very severe on this boy and there was testimony that the boy had become highly nervous, threatened suicide,

1. The trial court filed findings substantially as follows:

"4. The parties separated on or about January 15, 1964, by reason of the cruel, harsh and unkind treatment of defendant towards plaintiff.
"5. Sometime after their marriage, defendant, being unmindful of the duties and obligations of his marriage vows, began a course of studied and deliberate unkind, cruel, harsh and tyrannical conduct against plaintiff, which continued and became worse and more unbearable until she was forced to separate from him.

"6. Defendant has been guilty of excesses, cruel treatment and outrages toward plaintiff of such nature as to render their further living together insupportable.
"7. Defendant's conduct has caused plaintiff great physical and extreme mental pain and suffering, has undermined and impaired plaintiff's physical and mental health, and will continue to impair and will completely destroy her mental and physical health if their marriage continues and if they continue living together."

and required psychiatric treatment. Although appellant inherited a very substantial estate, appellee testified that she was not permitted to handle any money, and that appellant was very miserly. She said that she was given from twenty-five to forty cents a week, depending upon her behavior, for church benevolence. Appellant maintained a bank account for his separate property and there was friction over his juggling of funds between this account and one containing community funds. Appellee's primary complaints relate to excessive sexual demands and unnatural sex relations demanded of her by appellant.

Appellee had difficulty in carrying each of the children and was very nauseated during each pregnancy. Despite her delicate health she testified that appellant made frequent sexual demands upon her that endangered both her health and the life of the baby. She also testified to many unnatural and immoral ways that appellant demanded that she receive him. Little would be gained, compared to the harm to this family, by detailing these sordid and revolting acts which were fully described by appellee in her direct testimony. Appellant did not contradict this testimony, but asserted a plea against self-incrimination. He further urges that his wife was a willing partner in these acts and freely consented to same.

The trial court has impliedly found that appellant was responsible for this abnormal sexual behavior and, although it is difficult to understand why appellee did not sooner draw the line, we cannot say that this finding is without support in the evidence.

Appellee testified that she was educated by a religious order and was completely unprepared for the marriage relationship. She believed that she was required to do anything that pleased her husband, and that appellant frequently criticized her for failing to satisfy him. She was told that if she did not do so and he went elsewhere for his satisfaction, the sin would be hers. Appellant, by his pleadings and testimony, admitted that appellee was a person of refinement and good moral character. Appellant testified that the couple had difficulty with their sexual relations from the beginning. His religious belief was that the husband could have his wife sexually at any reasonable time he desired, and this belief was frequently told to his wife.

Appellee testified that these unnatural acts were offensive to her, and she was physically hurt many times to the extent that she would lie in bed and cry. She further testified that she was pretty well pressured by appellant into a lot of things. She said these acts kept her nervous and upset and affected her health. It is not disputed that at the time of the final separation appellee's physical and mental health was broken. Appellant admitted that his wife was underweight and needed medical attention. Dr. Liberty was called as a witness by appellant. He testified that he first treated appellee in May, 1963, and that she was suffering from multiple gastrointestinal complaints, directly referrable to chronic tension and chronic anxiety. He further testified that some of her difficulty was due to appellant's actions. He advised appellee that she could either continue to live under this constant stress and strain with the resulting difficulty, or get a divorce.

Appellant called several of the couple's social friends as witnesses, and they testified to many good qualities in this marriage. Appellant did not drink to excess, beat or curse his wife. They had four children, a nice home and, on the surface, appeared to get along fairly well. It is apparent, however, that the primary complaints of appellee were of such a nature that they would not ordinarily be discussed with a social friend. Several of these witnesses did confirm the nervous difficulties of the eldest son.

■■ Appellant urges further that the evidence was not full and satisfactory

because appellee's testimony was not corroborated. It is settled that corroboration of the testimony of the complaining spouse is not an indispensable requirement under Art. 4632, Vernon's Ann.Civ.Stats.; Finn v. Bond, 145 Tex. 244, 197 S.W.2d 108. Furthermore, it is seen that appellee's testimony of the unnatural demands and immoral acts are corroborated by appellant's failure to contradict her testimony, and by his urging that she willingly participated in these acts. Parker v. Parker, Tex.Civ. App., 165 S.W.2d 926. Her testimony is further corroborated by the diagnosis of Dr. Liberty as to the cause of her mental and physical difficulties.

■ We are not unmindful of the sacredness of the marriage vows and the significance to our social order of the continuity of same. It cannot be said, however, that these acts of perversion amount to only trivial complaints. The offensive and excessive sexual demands made of appellee, together with the other acts described by her, undermined and impaired her physical and mental health, and under the medical evidence will continue to impair her health if the marriage continues. This record supports the implied finding that appellant's conduct was studied and deliberate so as to constitute cruel treatment under Subd. 1 of Art. 4629, supra. McCullough v. McCullough, 120 Tex. 209, 36 S.W.2d 459; Thomason v. Thomason, Tex.Civ.App., 332 S.W.2d 148; Norvell v. Norvell, Tex.Civ.App., 194 S.W.2d 270, wr. dism. It is our opinion, after closely examining the lengthy record in this case, that there is full and satisfactory evidence

supporting the trial court's finding that appellant was guilty of excesses, cruel treatment and outrages of such nature as to render their further living together insupportable.

Appellant asserts that the decree of divorce was erroneously granted because appellee condoned any and all acts complained of by her. This contention is based upon the proposition that although appellee left appellant on October 14, 1963, she returned to their home on October 20, and they lived together for about three months until their final separation. He testified that he was careful to treat her very kindly during this period. Appellee testified that she returned to their home only because she was sick and had no other place to go. Further, it was agreed that she was returning only upon appellant's express promise to her and her family that he would treat her with consideration and they would try to make a new life. She testified, however, that contrary to his promise appellant almost immediately resumed his prior domineering conduct and unnatural sex demands of her. The final separation was brought to a head after appellee fainted during an argument over insurance policies when appellant suggested she see her lawyer.

■ The trial judge, after hearing this conflicting testimony, found that appellant's promises to appellee were breached and the former acts, omissions and conduct constituting cruel treatment were revived by appellant's subsequent conduct.[2] These findings are supported by the testimony of appellee. It is settled that where the acts of cruelty are repeated after

2. The trial court found substantially as follows:
"8. The plaintiff did not condone the acts, omissions and conduct of the defendant constituting the cruel treatment, and there was no reconciliation between them.
"9. If there was condonation by the plaintiff of the defendant's acts, omissions and conduct constituting the cruel treatment aforesaid and a reconcilation on the part of plaintiff and de-

fendant, it was upon the condition that defendant discontinue his former acts, omissions and conduct constituting such cruel treatment, and upon other conditions.
"10. Such conditions were thereafter breached by defendant, and he continued his former acts, omissions and conduct constituting such cruel treatment, and the former acts, omissions and conduct constituting cruel treatment were revived."

a reconciliation, the former acts are revived and are available as a basis for divorce. Pride v. Pride, Tex.Civ.App., 318 S.W.2d 715; Thompson v. Thompson, Tex. Civ.App., 231 S.W.2d 496; 20 Tex.Jur.2d, Divorce and Separation, § 50. Appellant's point asserting that the uncontradicted evidence shows condonation is therefore overruled.

This case went to trial at the urging of appellant on the sixty-first day after appellee's petition was filed, although the final decree was not signed until nearly four months later and after several hearings. On April 8 and 9, 1964, the court heard evidence of the grounds for divorce and both parties closed their evidence on this phase of the case at that time. At a subsequent hearing on May 28, appellant offered the deposition testimony of Dr. Stool and Dr. Weiss. Appellant complains of the trial court's refusal to hear this evidence on any issue other than custody of the children, and specifically of its refusal to consider same on the grounds for divorce.

■ The question of reopening the case and hearing additional testimony is left to the sound discretion of the trial court. Rule 270, Texas Rules of Civil Procedure; Lubbering v. Ellison, Tex.Civ.App., 342 S.W.2d 796, no wr. hist. There is no abuse of discretion shown under the record in this case.

The testimony of Dr. Stool shows only that the eldest son was physically normal. Dr. Stool admitted that he was not a psychiatrist and had not made such an examination of the boy. He did testify that the boy was a trifle subdued and a little tense on the two occasions he saw him.

■ Dr. Weiss was a psychiatrist who had treated appellee on March 23, 30 and April 15, 1964. He confirmed the testimony of appellee that she did not willingly participate in the immoral and unnatural sex acts, but was coerced into same by appellant. He further gave his opinion that

her complaints in this connection were genuine. He did refute appellee's testimony that he said the oldest boy needed psychiatric treatment in the home. He admitted on cross-examination that he had probably advised her that the boy's home situation needed to be changed. The trial judge heard this evidence in connection with custody of the children, and did not abuse his discretion in refusing to reopen the divorce case on the merits. Certainly, any error in this connection would be harmless because of the nature of the evidence given by these two doctors. Rule 434, T.R.C.P.

■ Appellant urges that the trial court erred in not permitting the introduction of certain deposit slips and bank statements, and this error resulted in an excessive property settlement being awarded appellee. It is our opinion that this point is too general for consideration. Wagner v. Foster, 161 Tex. 333, 341 S.W.2d 887 (1960). The evidence referred to consists of hundreds of deposit slips, check stubs, bank statements and cancelled checks, and there is no specific showing of what appellant expected to prove by them. In any event, harm is not shown by their exclusion.

The evidence on the property settlement was heard by the trial court at several hearings between April 9, and July 31, 1964. Appellant was the only witness on this phase of the case and he was most cooperative in preparing exhibits listing his various holdings and the time he acquired same. The statement of facts shows that at the final hearing he offered numerous checks as a group, drawn on the community property account of the parties in 1962 and 1963. His stated purpose was to show that his wife had made numerous expenditures from the account, and to show how he had spent the community funds. The court advised that there was no issue of mismanagement raised and declined to go through the tendered checks. The record shows that the trial court, with the consent of ap-

pellee's counsel, gave appellant full opportunity, over several months, to prepare exhibits which would trace and distinguish the separate and community property. Many exhibits were introduced and there is no showing that the tendered exhibits would add anything to this admitted evidence.

■ The trial court found that the value of the community estate was $280,240.00 and awarded appellee half of this sum. Appellant had admitted that the community estate was worth from $100,000 to $110,000. The additional sum was found under appellant's testimony that prior to 1956 he did not maintain a separate bank account and that many stocks were purchased from the one bank account which also contained community funds. Appellant admitted that his separate estate was valued at a million dollars. He was also awarded the couple's home which was valued at $60,000, although he had originally pleaded that this home was community property. He testified, however, that this pleading was in error in that he had been able to trace the funds that went into the home as being from his separate estate. The trial court is given wide discretion in dividing the community estate, and no abuse of same is shown under this record. Hayes v. Hayes, Tex.Civ.App., 378 S.W.2d 375.

■ The trial judge did not abuse his discretion in awarding appellee judgment for $3,500.00 as attorneys' fees. The granting of the divorce establishes that she had justifiable grounds for bringing this action. Becker v. Becker, Tex.Civ. App., 299 S.W. 528. The trial court was entitled to consider the relative financial standing of the parties in awarding appellee her attorneys' fees. Carle v. Carle, 149 Tex. 469, 234 S.W.2d 1002; Lewis v. Lewis, Tex.Civ.App., 218 S.W.2d 220.

Appellant has failed to demonstrate reversible error by this appeal. The judgment of the trial court is therefore affirmed.