Felipe SANCHEZ, Jr. and Luis F. Puig, Jr., Appellants,

v.

Charles B. DICKINSON et al., Appellees.

No. 15708.

Court of Civil Appeals of Texas, San Antonio.

May 4, 1977.

Thomas Rocha, Jr., Rocha, Tutt & Rosenberg, San Antonio, for appellants.

Lawrence A. Mann, Mann, Cronfel & Person, Nat B. King, Laredo, for appellees.

KLINGEMAN, Justice.

This case involves a first refusal right to purchase contained in a contract between Victor Pena and wife as sellers and J. W. Elledge as buyer, dated December 13, 1962, of record in the deed records of Zapata County, Texas. Suit was brought by appellees, Charles B. Dickinson and wife, Bertha G. Dickinson, against Gilberto Pena, Lilia Pena de Lucio, Gulf Oil Corporation, Felipe Sanchez, Jr., and Luis F. Puig, Jr. to avoid or cancel certain oil, gas, and mineral leases and mineral deeds on a tract of 152.73 acres, which leases and mineral deeds plaintiffs assert were made in contravention of a recorded first refusal option owned by them.

All defendants filed motions for summary judgment and plaintiffs moved for partial summary judgment. On May 24, 1976, the trial court denied each of the summary judgments filed by the respective defendants and granted plaintiffs partial motion

for summary judgment. Thereafter, on June 8, 1976, a final judgment was entered herein in which the court confirmed its previous judgment; Gulf was dismissed from the lawsuit; the cross-action filed by Puig was dismissed; plaintiffs were found to be the owners of an oil, gas, and mineral lease given in 1969 on the 152.73–acre tract by Victor Pena to James A. Mayo and thereafter assigned to Gulf,[1] which lease was found to be superior to an oil, gas, and mineral lease on such tract taken by Sanchez and Puig; and Sanchez and Puig are directed to convey to plaintiffs their interest in two mineral deeds and any rights they may have in and to the oil, gas, and mineral leases above referred to. Such judgments also provide for tender of certain payments by plaintiffs to Sanchez and Puig. This judgment contains various findings made by the trial court. Only Sanchez and Puig appeal from such judgment.

The trial court filed extensive findings of fact and conclusions of law, the pertinent portions of which may be summarized as follows:

1. The 1962 contract between Victor Pena and Elledge consisted of two separate parts: (a) an option to purchase a 991.21–acre tract except for the 200–acre homestead; and (b) a first option to purchase the reserved 200 acres, when and if sellers decide to convey said acreage. This contract was filed for record in Zapata County, Texas.

2. The first option to purchase this smaller tract was assigned by Elledge to the Garzas in 1963 and by mesne conveyances passed from the Garzas to Dickinson, where it is now vested.

3. Various oil, gas and mineral leases and mineral deeds were executed without notice to plaintiffs.

4. Neither Sanchez nor Puig asserted that the description of the land was inadequate or insufficient.

The court, in its conclusions of law, found that:

1. The first refusal right to purchase the homestead tract is separate and distinct from the remainder of the 1962 contract.

2. Such first refusal right is a covenant running with the land, is binding on Sanchez and Puig, and is without any time limitation.

3. Sanchez and Puig had constructive notice of the first refusal right to purchase.

4. Plaintiffs are entitled to have conveyed to them the various leases and mineral interests upon payment to Sanchez and Puig of the consideration that Sanchez and Puig paid.

The 1962 contract between Victor Pena and Elledge is styled "OPTION CONTRACT OF PURCHASE." The pertinent portions here involved are as follows:

Paragraph one provides for the purchase and sale of a tract of 743.94 acres of land out of a tract of 943.94 acres (by survey established as 791.21 acres out of the 943.94 acres), upon certain terms and considerations.

Paragraph four grants to the buyer the first option to purchase the reserved 200 acres (by survey determined to be 152.73 acres), when and if seller decides to convey said acreage.

Paragraph seven provides that the option shall be for 90 days from date and that the purchase price or consideration shall be the sum of $25.00 per acre or $18,600.00 (by mathematical calculation it is clear that this option refers to the 743.94 acres).

Paragraph nine provides that the option and agreement shall bind the heirs, executors, administrators, and assigns of both parties.

A chronological listing of the material instruments is as follows:

1. *12–13–62.* The contract between Victor Pena and Elledge, hereinbefore described.

2. *4–18–63.* Warranty deed from Victor Pena et ux. to Elledge of 791.21 acres. No reference is made of the first refusal right to purchase the 152.73 acres.

---

1. Gulf assigned whatever interests it had under such lease to plaintiffs.

3. *12-23-63.* Warranty deed from El- ledge to the Garzas conveying the 791.21-acre tract, which deed recites that El-ledge was given a first refusal option to purchase the smaller tract under a re-corded contract and this first refusal op-tion is conveyed to buyers.

4. *1-31-68.* Warranty deed from the Garzas to Dickinson and Rodriguez. Vir-tually identical to the deed above. Rodri-guez thereafter conveys his interest to Dickinson.

5. *9-16-69.* Oil, gas, and mineral lease from Victor Pena to James A. Mayo on the 152.73-acre tract. Mayo assigns and conveys this lease to Gulf Oil Corpo-ration.

6. *11-1-72.* Victor Pena dies and de Lucio and Gilberto Pena are named as executors of his estate.

7. *10-18-73.* Hunting and grazing lease on the 152.73-acre tract between de Lucio and Gilberto Pena and Dickinson.

8. *2-17-75.* Oil, gas, and mineral lease from de Lucio and Gilberto Pena on the 152.73-acre tract to Sanchez. There-after, Sanchez conveys an interest in such lease to Puig.

9. *3-28-75.* Mineral deed from de Lucio and Gilberto Pena on the 152.73-acre tract to Sanchez. Sanchez thereaft-er conveys an interest therein to Puig.[2]

The controlling question in this suit is whether appellees are the holders of a valid and subsisting first refusal right to pur-chase the 152.73-acre tract under the De-cember 13, 1962 contract of sale.[3]

Appellants assert that such first option was not a valid one because:

1. The time to exercise it had expired (90 days).

2. There was no purchase price men-tioned.

3. Such right was not a covenant running with the land.

4. It was not included in the warranty deed from Victor Pena to Elledge.

■ Although appellant refers to the first refusal right of purchase as an option, there are fundamental differences between an ordinary option to purchase and a right to buy ahead of others if the seller desires to sell, which is the nature of a preferential right to purchase. The rule is set forth in 77 Am.Jur.2d *Vendor & Purchaser* § 49 (1975), as follows:

The distinction between an option and a pre-emptive right to purchase in the event the landowner should decide to sell is well recognized. Unlike an option, a pre-emptive right does not give the pre-emptioner the power to compel an unwill-ing owner to sell; it merely requires the owner, when and if he decides to sell, to offer the property first to the person entitled to the pre-emptive right at the stipulated price. There is no doubt that an agreement based on a consideration to give the promisee the refusal or first right to purchase in case the landowner wishes to sell at a fixed price or at a price which may be made certain, while of less value than an ordinary option to pur-chase, is valid and binding on the land-owner. The pre-emptive right ripens into an option when the owner has elected to sell.

We are of the opinion that paragraph four of the 1962 contract granted a pre-emptive right to purchase in the event the landowner should decide to sell.

In *Gochman v. Draper,* 389 S.W.2d 571 (Tex.Civ.App.—Austin 1965), the lessee in the lease agreement was given the right of first refusal to purchase the interest of the lessor if the lessor desired to sell his inter-est. The Court of Civil Appeals held that the first refusal provision in the lease was a valuable, valid, enforceable contract right, and stated:

---

**2.** There was no contention made in the trial court that the property description was inade-quate or insufficient, and the description in the oil, gas, and mineral leases and mineral deeds allegedly owned by Sanchez and Puig is identi-cal with the description relied on by plaintiffs.

**3.** By one point of error appellants assert that the trial court erred in holding that the Decem-ber 13, 1962 contract of sale was a valid and subsisting first refusal right to purchase, which was assigned to plaintiffs and was a covenant running with the land.

The phrase 'first refusal' has acquired a well understood meaning in the business world which is that the owner of such right must be given the opportunity to buy the subject property on the terms offered by any bona fide purchaser. * *

It is indisputable that a purchaser from a lessor who has given lessee a right of first refusal to buy takes the property subject to that right and lessee must be granted the opportunity to purchase at the price transferred.[4]

In *Foster v. Bullard*, 496 S.W.2d 724 (Tex. Civ.App.—Austin 1973, writ ref'd n. r. e.), Foster brought suit to enforce the terms of a first refusal option agreement made with Bullard, who was acting for Casa Monte Company. Foster had purchased 30 acres, and the first refusal option covered an additional 50 acres. Bullard sold the 50 acres to Mutual. The Court stated:

Mutual took with actual notice of Foster's first refusal purchase rights. To be a *bona fide* purchaser Mutual was obligated to make reasonable inquiry to determine whether Casa Monte had met its obligations under the option contract to offer the fifty acres to Foster at a price consistent with Mutual's offer . . . . .

In *Stone v. Tigner*, 165 S.W.2d 124 (Tex. Civ.App.—Galveston 1942, writ ref'd), Tigner, the lessee under a lease agreement, was given the first right and option to purchase any and all of the land should the lessor decide to sell. The Court held that the option runs with the land itself, and thus, it was not a collateral or personal contract between the parties.

We have concluded that the contract and agreement between Victor Pena and Elledge, dated December 13, 1962, created a valid and binding first refusal right to purchase the 152.73–acre tract here involved.

Appellants assert that even if such contract created a valid and enforceable right to purchase said tract, it is no longer valid and subsisting, and that appellees have no rights thereunder because:

1. The time to exercise the option has expired (90 days).

2. There was no purchase price mentioned.

3. It was never transferred because it was not included in the warranty deed from Victor Pena to Elledge.

4. The doctrine of merger wiped out such first refusal right to purchase.

5. It was not a covenant running with the land.

6. Appellees have waived or are estopped to assert such rights.

■ Much of appellants' arguments are based on their contention that we have involved an ordinary option to purchase, and as such, is a continuing offer to sell during the option period irrevocable during such period, and that the transition of an option into a contract of sale can only be effected by an unqualified and unconditional acceptance of such offer in accordance with the terms and within the time specified in such option. Based on this premise, they assert that such option had to be exercised within 90 days. They also argue that there must be an agreed definite purchase price.

We have heretofore held that we do not consider this as an ordinary option, but rather as a pre-emptive right to purchase in the event the landowner should decide to sell. The owner does not have to sell, and until the owner decides to sell there is nothing to exercise nor would it be possible to fix in advance a definite certain purchase price. Because of the nature of such right the price and method of payment are made

4. The Supreme Court, in 400 S.W.2d 545 (Tex. 1966), reversed the case on other grounds. The case involved a foreclosure under a deed of trust. The Court stated that the first refusal right was given in the event the grantor 'desired to sell'; that this was intended to cover voluntary acts of grantor covering either an offer on the grantor's part to sell or his willingness to accept an offer from a third person, and stated: "Our holding is that the trustee's sale here was not a voluntary sale so as to give Gochman [the lessee] a preferential right to purchase. The purchasers at that sale took the property burdened with Gochman's right to purchase if they, during the term of Gochman's rights, desire to sell."

certain at such time as the seller elects to sell.[5] If the owner decides to sell, he is obligated to offer the holder of such pre-emptive right an opportunity to buy the subject property on the terms offered by a bona fide purchaser. Until such time, appellee was under no duty to act.

Moreover, from an examination of the entire contract, it appears clear that the 90–day option to purchase in the December 13, 1962 agreement dealt only with the larger tract and has no application to the first right of refusal pertaining to the smaller tract. Such provisions are in different and separate paragraphs of the contract, and it is clear from the purchase price therein stated that it pertains only to the larger tract.

Appellants also rely on the doctrine of merger. They contend that by virtue of the deed from Victor Pena to Elledge, which covered the larger tract but made no mention of the smaller tract, under the doctrine of merger, the entire contract has been consummated. While it is true that as a general rule a deed made in full execution of a contract to sell land merges the provision of the contract thereto, there are exceptions to this general rule, and when the deed constitutes only partial performance of the preceding contract, other distinct and unperformed provisions of the contract are not merged into it,, and where a contract of sale provides for the performance of acts other than the conveyance, it remains in full force and effect as to such other act until full performance thereof. 26 C.J.S. *Deeds* § 91c (1961).[6]

The doctrine of merger is not here applicable.

We do not regard the failure to mention the right of first refusal in the deed from Victor Pena to Elledge as fatal; in fact, it is consistent with the entire contract. The 90–day option was a separate and distinct provision which was consummated by the deed. The first refusal right to purchase the smaller tract, if the seller ever decides to sell it, was also a separate and distinct provision of the contract held by Elledge and which continued in force and effect. The subsequent deed by Elledge to the Garzas, and all deeds thereafter in the chain of title, refer to the pre-emptive right to purchase the smaller tract and transfer and assign this pre-emptive right to the subsequent purchaser, including, ultimately, the Dickinsons, appellees herein.

Appellants' contention with regard to waiver and estoppel is premised upon a hunting and grazing lease dated October 18, 1973 between the executors of the estate of Victor Pena as lessors and Charles B. Dickinson as lessee, covering the 152.73–acre tract. In such grazing lease there is a statement that such lands, or portions thereof, are now or may be leased during the terms thereof for oil, gas, and other minerals, and that the hunting and grazing lease is subject to any such oil, gas, and mineral leases theretofore executed or any that may be thereafter executed.

While there were a number of defendants in the trial court, the only defendants who filed an appeal herein are Sanchez and Puig. The answers by these two defendants do not specifically plead or even mention the defense of waiver or estoppel.[7]

---

5. In *Sinclair Ref. Co. v. Allbritton*, 147 Tex. 468, 218 S.W.2d 185, 188 (1949), the Court said: "If the price is to be based on what a third party may offer, the result is not a purchase option in the usual sense—what the contract here calls 'the exclusive option and privilege of purchasing',—but rather a mere right of refusal which should hardly be called an option at all. If the price is to be the market value of the premises at the time the option is exercised, then usually no price in dollars and cents is named."

6. See *Thompson v. Reising*, 114 Ind.App. 456, 51 N.E.2d 488 (1943), where the Court says, "If,

however, the contract for the sale of land creates rights collateral to and independent of the conveyance, the contract to that extent survives a deed that is silent in respect thereto. This is on the theory that the conveyance is not necessarily a performance of such collateral and independent agreements, . . . .''

7. Waiver is frequently defined as an intentional relinquishment of a known right or intentional conduct inconsistent with claiming it. *Massachusetts Bond. & Ins. Co. v. Orkin Exterm. Co.*, 416 S.W.2d 396 (Tex.1967). There are various types of estoppel, but ordinarily, for estoppel to

■ We overrule appellants' contention with regard to waiver or estoppel for the following reasons: 1. Neither of the defendants plead waiver or estoppel in the trial court. 2. The recitals in the hunting and grazing lease are not a part of the contract sued upon herein.[8]

■ Appellants also assert that the first refusal right to purchase the 152.73–acre tract did not prohibit Victor Pena, the owner of such tract, from executing oil, gas, and mineral leases. This would be true of an ordinary lease. However, it is well settled that in Texas an oil, gas, and mineral lease is a sale of an interest in land. *Mills v. Brown,* 159 Tex. 110, 316 S.W.2d 720 (1958); *Avis v. First Nat. Bank of Wichita Falls,* 141 Tex. 489, 174 S.W.2d 255 (1943); *Sheffield v. Hogg,* 124 Tex. 290, 77 S.W.2d 1021 (1934), *motion for rehearing overruled per curiam,* 124 Tex. 290, 80 S.W.2d 741 (1935). The trial court properly held that the oil, gas, and mineral leases and mineral deeds given by Victor Pena or his successors in title were in derogation of plaintiffs' pre-emptive right of first refusal to purchase the 152.73–acre tract.

■ By one point of error appellants complain that the trial court should have complied with appellants' timely requests for additional findings of fact and conclusions of law. In July 1976 appellants filed a request for findings of fact and conclusions of law. Thereafter, the court filed its findings of fact and conclusions of law, which are quite extensive and which have been hereinbefore summarized. Appellants requested additional findings of fact and conclusions of law, and the court made some additional findings, but also held that no additional findings, as requested by appellants, were warranted because:

1. The facts are adequately covered by his original findings.

2. The requested findings could not affect the judgment rendered.

3. The requested findings call for immaterial and evidentiary material, as well as facts in conflict with evidentiary supported findings.

4. The requested findings call for a statement of the theory of the case that is in variance with the court's findings theretofore filed and on which the case was tried.

5. The requested findings have been disposed of directly or indirectly by the court's findings theretofore filed.

6. The requested findings do not relate to ultimate or controlling issues.

The findings filed by the court adequately cover all elements of the action, and the additional requested findings of fact and conclusions of law were immaterial. We find no error in the trial court's refusal to make additional findings. Rule 296, Tex.R. Civ.P.; *Wagner v. Riske,* 142 Tex. 337, 178 S.W.2d 117 (1944); *Houssiere v. Houssiere,* 389 S.W.2d 533 (Tex.Civ.App.—San Antonio 1965, no writ); *Domengeaux v. Kirkwood & Co.,* 297 S.W.2d 748 (Tex.Civ.App.—San Antonio 1956, no writ); 4 McDonald Texas Civil Practice § 16.07 (1971).

exist, there must be (1) a false representation or concealment of material facts; (2) made with knowledge, actual or constructive of these facts; (3) to a party without knowledge, or the means of knowledge of these facts; (4) with the intent that it should be acted on; and (5) the party to whom it was made must have relied or acted on it to his prejudice.

**8.** In 31 C.J.S. *Estoppel* § 58 (1964), it is said: "A recital is not binding in an action not founded on the contract." *Perry Nat. Bank v. Eidson,* 161 Tex. 340, 340 S.W.2d 483 (1960), involved controversy between the Bank and the heirs of Eidson as to the ownership of a 600–acre tract of land. Eidson had conveyed a 600–acre tract of land out of a 1190–acre tract to the Eidson Club Lake, which thereafter conveyed such tract to the Bank. Thereafter, Eidson and Bank executed an agreement fixing and settling the boundary line between the 600–acre tract and a 590–acre tract. After Eidson's death his heirs contended that the Bank had only a mortgagee's interest in the 600 acres. The Bank filed a trespass to try title suit and contended that the boundary line agreement estopped Eidson's heirs from claiming any ownership of the 600 acres. The Supreme Court held that the boundary line agreement was only for the purpose intended by that agreement, and that a recital in a simple contract is not binding in a suit which is not based upon the contract.

Appellants' other point of error is that the trial court erred in granting summary judgment for plaintiffs. All parties, plaintiffs, and defendants filed motions for summary judgment. The trial court overruled all defendants' motions for summary judgment, of which no complaint is here made. Appellants assert that the summary judgment for plaintiffs was improperly granted because (a) there are disputed issues of fact; (b) plaintiffs' affidavit in support of its motion for summary judgment is self-serving, contains conclusions, incompetent hearsay, and is that of an interested person.

We have concluded that plaintiffs' motion for summary judgment was properly granted for the various reasons hereinbefore set forth in this opinion. The summary judgment was based not only on the supporting affidavit, but also on a stipulation and on numerous written instruments, which, in our opinion, establish as a matter of law all material facts and issues necessary to the summary judgment granted.

All of appellants' points of error have been considered and all are overruled.

The judgment is affirmed.