WILEY DAVIS ET AL. v. E. D. SKIPPER ET AL.

No. 6532. Decided June 5, 1935.
(83 S. W., 2d Series, 318.)

*Stokes & Jarmen,* and *Jarman & Brown,* all of Oklahoma City, Okla., *Weeks, Hankerson & Potter,* of Tyler, for plaintiffs in error.

It was error for the Court of Civil Appeals to hold that the defendants in error, Skipper et al, had an interest and estate in the land involved, sufficient to justify the issuance of a temporary injunction restraining plaintiffs in error from prospecting and producing oil thereon. 20 R. C. L., 728; 23 R. C. L., 1103; Lyford v. Laconia, 75 N. H., 220, 72 Atl., 1085; Priddy v. School District, 92 Okla., 254, 219 Pac., 141; Landers v. Landers, 151 Ky., 206, 151 S. W., 386.

*Edwin M. Fulton,* of Gilmer, for defendants in error.

Under the deed involved, the church is restricted to use of the land conveyed solely for church purposes, which restriction

runs with the land and the heirs of the grantors, and any additional use of the property terminates the grant. West Texas Utilities Co. v. Lee, 26 S. W. (2d) 457; Magnolia Pet. Co. v. Suites, 40 Fed. (2d) 161; White v. Hansen, 36 S. W. (2d) 456; Plaster v. Stutzman, 8 S. W. (2d) 750.

*W. G. Banks,* of Houston, filed written argument as amicus curiae.

MR. JUDGE GERMAN delivered the opinion of the Commission of Appeals, Section A.

On October 1, 1909, H. T. Elder and wife executed and delivered a deed to the trustees of the African Methodist Episcopal Church of Kilgore, Texas, conveying one acre of land, which deed is as follows:

"The State of Texas, County of Gregg.

"Know all men by these presents: That we, H. T. Elder and his wife, Sarah E. Elder, of the County of Gregg, State of Texas, for and in consideration of the sum of Ten and No/100 Dollars, to us in hand paid by Curtis Booty, Frank Dodson, Peter Coxon, Wm. Baxter and Sam Moore, Trustees of the African Methodist Episcopal Church of Kilgore, Texas, and known as Butler Chapel, the receipt of which is hereby acknowledged, and the further consideration of agreement made that said premises shall be used for church purposes only and that in case the same is abandoned as such, that the title shall be revested in the said H. T. Elder, have Granted, Sold and Conveyed, and by these presents do Grant, Sell and Convey unto the said Curtis Booty, Frank Dodson, Peter Coxon, Wm. Baxter and Sam Moore, Trustees as aforesaid, and their successors in office, of the County of Gregg, State of Texas, all that certain tract, or lot, lying and being situated in Gregg County, Texas, and described as follows, to-wit: (Here follows description of 'one acre of land be there more or less').

"To have and to hold the above described premises, together with all and singular the rights and appurtenances thereto in anywise belonging unto the said Trustees and their successors in office, heirs and assigns forever; and we do hereby bind ourselves and our heirs, executors and administrators, to warrant and forever Defend, all and singular the said premises unto the said Trustees and their successors in office, heirs and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof."

The defendants in error here, who were plaintiffs in the trial court and will be referred to herein as plaintiffs, are the

heirs of H. T. Elder and wife, both deceased. The plaintiffs in error are the successor trustees of the Methodist Church, known as Butler's Chapel, the pastor thereof, the presiding elder of the Jacksonville district of the Methodist Conference, and the holders of an oil and gas lease upon the one acre of land executed by the trustees of the church. They will be referred to as defendants.

It is agreed that after the deed mentiond was executed, the church went into possession of the one acre of land and erected a church building thereon, which is still standing; that the property has continuously been used by the church as a place of religious worship and has never been abandoned for church purposes. It is further agreed that on February 29, 1932, the defendant trustees, acting for the church, executed to Carl Olsen an oil and gas lease on the one acre of land, and that under such lease an oil well was being drilled upon said land at the time of the institution of this suit.

Plaintiffs sought by this action to recover the title and possession of said acre of land, on the theory that the condition upon which the deed had been made had been breached, resulting in a termination of the title held by the church; and in the alternative sought an injunction to restrain the drilling of the oil well and the production of oil from the land, on the theory that the deed to the church contained a covenant restricting the use of the land to church purposes only, and that the drilling of an oil well on the land, with production of oil, was a violation of that covenant and would result in the destruction of the estate which they (plaintiffs) held therein.

The trial court denied plaintiffs a recovery of the land and also denied them any equitable relief. The Court of Civil Appeals held that as there had been no abandonment of the land for church purposes, and the condition upon which the deed was made had not been breached in that regard, plaintiffs had no interest in the land other than a "possibility of reverter," and were therefore not entitled to recover the land or the possession thereof. The court held, however, that the plaintiffs as the holders of a possibility of reverter had such a present interest in the land as entitled them to injunctive relief to prevent waste; it being held that the production of oil from the land would constitute a destruction of the estate and waste. The court therefore held that the trial court erred in refusing the injunction, and the case was reversed and remanded upon that issue. 59 S. W. (2d) 454.

It will be observed that the consideration for the convey-

ance in question is threefold in its nature: (a) The sum of Ten Dollars; (b) an agreement that the premises should be used for church purposes only; and (c) that in case the same is abandoned as such, the title shall revest in H. T. Elder.

1   There are many authorities to the effect that a recital in a deed of conveyance that it is made upon a money consideration, and a further consideration that the grantee shall do certain things, or that only a certain use shall be made of the property, does not impose a condition and does not create an estate upon a condition subsequent.  8 R. C. L., p. 1101; 18 C. J., pp. 353-354; Board of Councilmen v. Capital Hotel Co., 188 Ky., 754, 224 S. W., 196; Adams v. First Baptist Church, 148 Mich., 140, 111 N. W., 757; Fraley v. Wilkinson, 79 Okla., 21, 191 Pac., 156.  This being true, it is obvious that in this instance the condition subsequent is not created except by the additional language, "and that in case the same is abandoned as such that the title shall be revested in the said H. T. Elder." It has been found as a fact, and is not controverted, that the property has not been abandoned for church purposes, but is still used as such, and therefore there has been no breach of the condition subsequent.  As the condition upon which the title to the land was conveyed has not been broken, it is manifest that all interest plaintiffs have in the land is a possibility of reverter.  This is not such an estate as permits them to recover the title and possession of the land, and the Court of Civil Appeals correctly ruled upon this point.

The next question for decision is this:  As plaintiffs have only a possibility of reverter, are they in position to maintain an action for injunction to prevent the drilling of the oil well and the production of oil from the land?  The Court of Civil Appeals held that they had such an interest.  We think the authorities are decidedly to the contrary.  We are not particularly concerned with the technical definition of a "possibility of reverter," but with the practical question of the estate in the land held by the grantees until the happening of the condition upon which it will terminate.

2   So long as there is no abandonment of the land for church purposes, the trustees of the church have therein what has been termed a "base, qualified or determinable fee."  Such an estate is a fee, because by possibility it may endure forever; but "as it depends upon the concurrence of collateral circumstances which qualify and debase the purity of the donation, it is

therefore a qualified or base fee." The nature of such an estate is stated in 21 Corpus Juris, p. 923, as follows:

"Until its determination such an estate has all the incidents of a fee simple, and while this estate continues, and until the qualification upon which it is limited is at an end, the grantee or proprietor has the same rights and privileges over his estate as if it was a fee simple. He has an absolute right to the exclusive possession, use, and enjoyment of the land and as complete dominion over it for all purposes as though he held it in fee simple. He is not generally liable for waste."

3 It follows therefore that the grantee under such a deed as is involved here may use the land to the extent of producing the oil and gas therefrom, and, conversely, the holder of a mere possibility of reverter has no such estate as authorizes him to maintain an injunction to prevent such use of the land. Williams v. McKenzie, 203 Ky., 376, 262 S. W., 598; Hillis v. Dils, 53 Ind. App., 576, 100 N. E., 1047; Cannon v. Peterson, 193 Ill., 372, 62 N. E., 210; Landers v. Landers, 151 Ky., 206, 151 S. W., 386; Dees v. Cheuvrouts, 240 Ill., 486, 88 N. E., 1011; Hopper v. Barnes, 113 Cal., 636, 45 Pac., 875; New Jersey Zinc & Iron Co. v. Morris Canal & Banking Company, 44 N. J., Eq., 398, 15 Atl., 227.

These cases, as well as others which could be cited, are so directly in point as to be decisive of the question. In the case of Hillis v. Dils, supra, the court said:

"The owner of a determinable fee in real estate has all the right of an owner in fee simple in regard to the use or disposal of the real estate; he may use it in any way, may cut and sell the trees growing upon the land, strip the sod and clay from its surface, take out the minerals from underneath, sell it without restriction; his rights being equivalent to those of an owner in fee simple, save that his fee is liable to be defeated at any time by the occurrence of the contingency by which it is determined, and, if he should sell, his purchaser would also take a determinable fee. But no owner of real estate can entirely use up or destroy his property, though he may so use it as to make it of less value than it possessed when he acquired it. From the nature of real property, however used, there will always be left a portion of the earth's surface from the ownership of which the holder of a determinable fee is liable to be divested, although he may have denuded it to bare rock, and made it practically valueless for any purpose, and in so doing have remained wholly within his legal rights."

In several of the cases cited suits were brought by the

holders of the possibility of reverter for an injunction to prohibit the drilling of an oil well, and in each instance relief was denied.

The provision of our statute which gives the quality of assignability to a possibility of reverter, does not have the effect of depreciating the estate held by the holder of a determinable fee.

This, in our opinion, is decisive of the case; but plaintiffs vigorously argue that the recital in the deed as follows, "and the further consideration of agreement made that said premises shall be used for church purposes only," constitutes a restrictive covenant which creates an equitable easement in the one acre in their favor, and that they have such right or interest in the land as entitles them to an injunction to prevent the drilling of the oil well, on the theory that it is an attempt to make use of the land for other than church purposes, and is consequently a breach of the restrictive covenant. We have given extended study to this contention and have reached the conclusion that it is without merit.

In the first place, so far as the one acre of land is concerned, it seems to us obvious that if plaintiffs do not have such a present interest therein as authorizes them to obtain an injunction to prevent the production of oil, they do not have such an interest as entitles them to an injunction to prevent an additional use of the land, or to prevent a breach of the covenant. It is evident therefore that if they are entitled to relief, they must possess an interest in some other land to which their right or equity in the one acre would attach as a dominant estate.

4 Before discussing the right to enforce a restrictive covenant, we think it appropriate to say that in our opinion the mere recital that a part of the consideration was an "agreement made that said premises shall be used for church purposes only" was not intended to create a restrictive covenant as to the use of the land. In the case of Settegast v. Foley Bros. Dry Goods Co., 114 Texas, 452, 270 S. W., 1014, it was said:

"Covenants or restrictive clauses in instruments concerning real estate must be construed strictly, favoring the grantee and against the grantor, and all doubts should be resolved in favor of the free and unrestricted use of the premises."

In this instance it seems clear to us that Elder was making a gift or contribution of the land to the church, and the language used was merely indicative of the reason prompting him to make the gift, and was never intended to be a restrictive

covenant. This is emphasized by the fact that it is provided that when it ceased to be used for church purposes the land was to revest in him. He was in effect saying that as this property was to be used for church purposes, he was willing to grant same to the trustees as a contribution, with the understanding that when it served its purpose and the church no longer desired to use same it would be revested in him.

Again, we think it reasonably certain that so long as the property was used for church purposes, there was no intention to restrict its physical use, provided it was not dedicated to some other inconsistent business or enterprise, such as making it a place for public amusement or devoting it to some manufacturing or business purpose.

Tested by the rule which favors the free and unrestricted use of property, we think that under either of the foregoing theories this may be reasonably regarded as not intended to be a restrictive covenant concerning the use of land.

There is not a word in either the pleadings or the proof to show that Elder at the time he executed this deed had any other land adjacent to or adjoining the land conveyed. Nor is there anything showing the circumstances from which his purpose may be inferred. The existence of an "easement" or "equity" in a tract of land growing out of restrictive covenant as to use can hardly be conceived except in connection with another tract of land, which may be said to be the dominant estate and for which the easement or equity is created. In every case where parties seek to enforce a restrictive covenant the burden of proof is upon them to establish that the covenant was imposed on defendant's land for the benefit of land owned by them. It is also well settled that in the absence of proof that a restriction was imposed for the benefit of other land, it is construed as a personal covenant merely with the grantor. In many instances it is held that unless it is expressly shown in the conveyance itself that the restriction is imposed for the benefit of other land, or unless there is an obvious purpose to sell in accordance with a general plan, the covenant must be construed as merely a personal one. In any and all events, in a case like the present one, where there is nothing to show that the grantor owned other lands and nothing whatever to disclose his purpose, or the mutual intention of the party, the covenant (if it is a covenant at all) must be construed to be purely a personal one with the grantor.

5 After a most exhaustive study of the authorities we have reached the conclusion that even if this be regarded as a cove-

nant intended for the benefit of other lands which were owned by the grantor at the time, it cannot be enforced by injunction in the absence of proof that plaintiffs still retained lands for which the covenant was created to benefit. Stevens v. Galveston, H. & S. A. Ry. Co., 212 S. W., 639; Maddox v. Adair, 66 S. W., 811. But in the absence of proof that the restriction (if it be admitted that it is one) was imposed for the benefit of other lands, it must be construed as purely a personal covenant with the grantor, and not enforceable by injunction in behalf of his heirs. Toothaker v. Pleasant, 315 Mo., 1239, 288 S. W., 38; Coughlin v. Barker, 46 Mo. App., 54; Berryman v. Hotel Savoy Co., 160 Cal., 559, 117 Pac., 677, and authorities cited; Skinner v. Shepard, 130 Mass., 180; Hensley v. Marlborough Hotel Co., 62 N. J. Eq., 164, 50 Atl., 14; Ringgold v. Denhardt, 136 Md., 136, 110 Atl., 321; Los Angeles University v. Swarth, 107 Fed., 798; Bealman v. Tippett, 145 Md., 568, 125 Atl., 806.

In the case of Skinner v. Shepard, supra, the holding is clearly set forth in the syllabus, which we quote as follows:

"Land, bounded on one side by a street and on another side by a railroad, was conveyed 'subject to the condition that no building shall ever be placed on that part of the same lying within twenty-five feet of said street, and also that the present occupant of a part of the premises near said railroad for a lumber-yard shall be allowed the time until the first day of October next after the date hereof to remove his lumber and evacuate the premises, but no longer without the consent of said grantee.' Held, that both clauses of the provision took effect only by way of restriction; and that the restriction as to building, in the absence of evidence that it was imposed for the benefit of other land, must be construed as a personal covenant merely with the grantor, which his heirs could not enforce after his death."

The case of Los Angeles University v. Swarth, supra, is still more directly in point, in view of the allegations in this instance on the part of the trustees to the effect that they propose to use the money received from the oil to erect a new church building and for other religious purposes. In the case mentioned we quote from the syllabus as follows:

"Complainants alleged that they conveyed certain land to defendant corporation upon a covenant that it should be used exclusively as a campus for a university, being induced thereto by representations made by defendant's representatives as to the great benefit which would accrue from the location and

maintenance of the university there to the owners of property in the vicinity. They further alleged that defendant or its lessee was proceeding to erect derricks and other structures on the land for the purpose of drilling for oil thereon, and converting it into an oil field, in violation of such covenant, and thereby preventing its use as a campus, and they prayed for an injunction restraining defendant from making such use of the land. Held, that in the absence of any allegation that complainants were, at the time of filing their bill, the owners of any property in the vicinity which could be injuriously affected, it did not appear that they retained any interest in the covenant which entitled them to maintain the suit.

"A corporation organized for the purpose of establishing and maintaining an education institution, and to which land has been conveyed upon a covenant that it shall be used exclusively as a campus for such institution, does not substantially violate such covenant by permitting a lessee to occupy a portion of the land for the purpose of drilling for oil thereon, where it appears that such occupation will probably be but temporary, and will not permanently injure the land for the purpose for which it was granted, and that the school is to be continued, and the revenue derived by the corporation from such use of the land devoted to its maintenance."

The question is thoroughly annotated in 21 A. L. R., pp. 1281 to 1288.

The judgment of the Court of Civil Appeals is set aside and the judgment of the trial court is in all things affirmed.

Opinion adopted by the Supreme Court June 5, 1935.