**THOMPSON et al. v. THOMPSON et al.**
No. 12173.

Court of Civil Appeals of Texas. Galveston.
April 27, 1950.

Rehearing Denied June 1, 1950.

Cole, Patterson, Cole & McDaniel, Houston, attorney, Bennett B. Patterson, Houston, of counsel, for Mrs. Edna Thompson.

W. H. Betts, of Hempstead, for Ethel Thompson Charpiot and husband, and Hazel Thompson Norman and husband.

C. D. Duncan, J. Lee Dittert, Dan Hruska, Bellville, for Roy Thompson, individually and as independent executor of the estate of R. W. Thompson, deceased, and others.

GRAVES, Justice.

This appeal, by Mrs. Edna Thompson, a feme sole, and by Mesdames Ethel Char-

piot and Hazel Norman, joined by their respective husbands, as appellants, against Roy Thompson, individually, and in his capacity as independent executor of the will of R. W. Thompson, deceased, as the appellee, is from a judgment of the District Court of Austin County, sitting without a jury, in a cause filed in that court by such appellee in such two capacities against the several three named appellants, wherein he had sought both a construction of the will of R. W. Thompson, deceased, and a resulting declaratory judgment by the court, instructing him, as such executor, as to what disposition should be made of the assets and properties belonging to the estate of such deceased, as well as to how his duties and compensations should be carried out and computed; especially did he seek instructions from the court as to how and to whom the federal estate taxes and the Texas inheritance taxes against such estate should be computed, and to whom they should be paid.

The appellant Mrs. Edna Thompson was the surviving widow of R. W. Thompson, deceased, having resided with him as his wife upon the homestead lands belonging to his estate from October 8th of 1916, until his death on October 19, 1948; whereas, the appellants Mrs. Ethel Charpiot and Mrs. Hazel Norman were the daughters of the first wife of R. W. Thompson, deceased, who herself had died on or about the 12th day of February, 1902, she having been the mother of Roy Thompson, the appellee, as well as of the appellants Mrs. Ethel Charpiot and Hazel Norman, those three having been the only children of R. W. Thompson, deceased, he and appellant Mrs. Edna Thompson having had no children.

In a word, the parties now before this court constituted the only persons eligible to any interests in the entire estate left by the lately-deceased R. W. Thompson, and, aside from all his other holdings, assets, and liabilities, the major property thus brought under the invoked justiciary power of the court was the 343¾ acres of rural land, on which the deceased and his wife, appellant Mrs. Edna Thompson, had lived and claimed as their homestead during their entire married life, and upon which she (appellant) still lives, and so still claims as her homestead.

Moreover, that homestead 343¾ acres, at all such times, was undisputedly R. W. Thompson's separate estate.

As indicated, the appellee-executor sought his prayed-for adjudications upon quite a variety and volume of personal properties, seeking a comprehensive adjudication of title, partition, and disposition, as between the other parties to the suit and himself as such executor, as to such entire estate of his deceased father.

Mrs. Edna Thompson, the appellant herein, filed below an answer and cross-action in the executor's suit, first presenting a renunciation by herself of her deceased husband's will, and her own refusal to claim any rights thereunder to any of his estate, pursuant to the law in such circumstances, and then setting up her own independent claim to the 343¾ acres as her homestead; further, declaring upon her privileges as such survivor, asserting her own independent right to receive all income (including that from oil, gas, and other minerals) from the undivided one-half interest of R. W. Thompson in such land, also setting up her claim not only to such rents, revenues, and royalties from the land, but, in addition, the right to occupy the surface thereof as her homestead during the remainder of her life.

The trial court, sitting without a jury, incorporated its findings of both fact and law therein and rendered judgment, in so far as is deemed necessary to state it here, in very brief substance, to this effect: Affirming the probate by the County Court of the will of R. W. Thompson, deceased, as declared upon by all parties, as well as of the due qualification of Roy Thompson as executor thereof; that the court had jurisdiction over all the parties and the subject-matter of the suit; and that the relations between such parties, recited supra, existed; that, on December 28th of 1925, the late R. W. Thompson, joined by his then wife, Mrs. Edna Thompson, appellant herein, leased his one-half interest in the homestead of 343¾ acres of land here involved to Harry Pennington, vesting in him the

exclusive right of mining and drilling for oil, gas, and other minerals, "as well as such easements over and across the surface of said lands as were necessary for such mining and/or drilling operations, for a cash consideration and the additional consideration of the obligation of such lessee to deliver to lessors as royalty one-eighth (⅛), in kind, of such oil as might be produced from said premises by said lessee. Said lands being the separate property of the said R. W. Thompson * * *;

"That on April 1, 1927, the said R. W. Thompson, joined by his wife, Mrs. Edna Thompson, by a division order, sold and conveyed to the Humble Oil and Refining Company all of the rights to receive royalty payments, in kind, from or under the terms of the above said lease dated December 28, 1925 to Harry Pennington, and agreed in writing to accept in lieu of such royalty oil, in kind, if and when produced, the field market price, in cash for such oil and gas in the form of checks of the Humble Oil and Refining Company;

"That the undivided one-half interest of R. W. Thompson in the above described 343¾ acres of land, less the oil, gas and other minerals in, on and under the same, constituted the homestead of the late R. W. Thompson and wife, Mrs. Edna Thompson, at the time of the death of the said R. W. Thompson;

"That, at the time of the death of the late R. W. Thompson he was not entitled to the possession of the mineral estate in, on and under said homestead lands, by reason of the execution, acknowledgement and delivery by said R. W. Thompson and wife, Edna Thompson, of the lease to Harry Pennington, dated December 28, 1925; nor were the said R. W. Thompson and the said Mrs. Edna Thompson entitled to any possessory right in the minerals described in said lease, but the exclusive possession thereof was in the Humble Oil and Refining Company as successor in title of the said Harry Pennington, the original lessee; nor were they at such time entitled to receive as royalty, or otherwise, any oil, gas or other minerals, in kind, produced from the abovesaid lands; that the open mine doctrine does not apply to this case; and

Mrs. Edna Thompson is not entitled to the possession of any of the mineral estate, in, on and under these lands and is not entitled to receive the cash payments for royalties on oil and gas produced therefrom (from wells producing at the time of the death of R. W. Thompson, or thereafter) during her lifetime or so long as she occupies the residence and surface estate of the homestead of the late R. W. Thompson as her homestead;

＊ ＊ ＊ ＊ ＊ ＊

"That the said Mrs. Edna Thompson has resided in the residence or home of the late R. W. Thompson and used and occupied the surface estate of the homestead of the late R. W. Thompson as her homestead, and has not abandoned the same since his death; * * *".

The record and the briefs on appeal are somewhat susceptible of confusion—due to the fact that the executor originally sued Mrs. Thompson, Mrs. Charpiot, and Mrs. Norman in the trial court, each of whom became cross-plaintiffs therein—so that the latter two ladies are alternately to be considered as appellants and appellees, also, here.

The executor, Roy Thompson, however, consistently appears as the appellee in his two capacities; that is, as such executor and individually. In this court he seems, as his brief recites, to be somewhat in the attitude of an amicus curiae, seeking "final direction as to what his authority is as an independent executor, and what the respective rights of each of the appellants are in the matter of the res and subject matter of this suit".

■ On the other hand, the major controversy was between the appellant Mrs. Edna Thompson, on the one side, and her deceased husband's daughters, the appellees (or cross-appellants), on the other, as to what were the homestead rights of Mrs. Thompson in the 343¾ acres.

Mrs. Thompson contends:

(a) That her late husband, R. W. Thompson, owned, as his separate property, an undivided one-half interest in the surface and a one-fourth interest in the oil, gas, and other minerals in, on, and under

the lands upon which they lived as a homestead, subject to the aforesaid oil, gas, and mineral lease granted by him and herself to Harry Pennington;

(b) That at his death R. W. Thompson had or was entitled to such a possessory right in such oil, gas, and minerals as would authorize the imposition of such a homestead right upon such mineral estate, as to give her a life-estate therein;

(c) And, under such claimed right and "the open mine" doctrine, she claims to own all royalties payable on such minerals during the remainder of her life, or until she may move her residence from such lands.

Contrarily, Mrs. Charpiot and Mrs. Norman, in turn, contend:

(1) That the late R. W. Thompson was without the requisite possession, or the (then) present right to the possession, of the oil, gas, and other minerals as would support a homestead claim or right.

(2) That appellant, Mrs. Edna Thompson, could have no greater possessory right than that of R. W. Thompson; and, therefore, she cannot assert any homestead right in such minerals; and

(3) That, she having no homestead rights, or other possessory rights or life estate in or to such minerals, "the open mine" doctrine has no application whatsoever to this case.

This court concludes that the issue of law thus clearly drawn was correctly decided by the trial court, as quoted from its judgment, supra, and that, under its findings of fact, which appear to have been supported by the undisputed evidence, and under these well-settled rules declared by our Texas courts, that decision must be upheld, to wit: 31A Tex.Jur., 191–197, Sections 118–119, and footnote-cited authorities.

In other words, it is held that subsequent to the acquirement of such oil, gas, and mineral lease by the lessee and the production of oil and gas thereunder by him, or his assigns, and so long as such tenure and production thereunder continued, R. W. Thompson and his wife were without any right to the possession of any such oil, gas, and other minerals in and under the land covered thereby. Crawford v. Humble

Oil & Refining Co., Tex.Civ.App., Galveston, 150 S.W.2d 849, 852–853, error dismissed, judgment correct; Shell Petroleum Corp. v. State, Tex.Civ.App., Austin, 86 S.W.2d 245, 248; Petroleum Producer's Co. v. Reed, Tex.Com.App., 135 Tex. 386, 144 S.W.2d 540, 541; Chaffin v. Hall, Tex. Civ.App., Eastland, 210 S.W.2d 191, error refused; Schittler v. Smith, Tex.Com.App., 101 S.W.2d 543, 544; 31A Tex.Jur. 43–4 and 311, Sec. 177, Davis v. Skipper, 125 Tex. 364, 83 S.W.2d 318; Rio Bravo Oil Co. v. Staley Oil Co., 138 Tex. 198, 158 S.W.2d 293.

Since such rule of law was comprehensively settled by our Supreme Court in the case of Stephens County v. Mid-Kansas Oil & Gas Co., 113 Tex. 160, 254 S.W. 290, 291, 29 A.L.R. 566, under the legal equivalent of the same state of facts here existing, it would be supererogatory to do more than cite the holdings, which has been done.

In concluding that phase of the discussion, it may not be amiss to cite the established fact in this instance that there had never been any termination of the lease so granted by the Thompsons to Pennington, nor a cessation of the production thereunder in the hands of his assignee; wherefore, there had been no right of a reverter on that score which could have accrued to Mrs. Thompson up to the time of this trial.

Furthermore, as the trial court's judgment recites, she had never been ousted from her right to or occupancy of the surface of the 343¾ acres here involved as her homestead, but was then still enjoying the same.

It follows, therefore, that the appellant's appeal, which admittedly by her leading counsel in his oral argument before this court, was dependent upon the applicability thereto of the well-known doctrine of "the open mine" in life estates, cannot prevail. This for the reason that such doctrine applies only to a different state of facts; that is, to conditions where the owners have not so conveyed away the exclusive right to mine for and produce minerals from the land—as well as the possessory right to it for that purpose—and their grantee has developed it, all before their death, as was done in this instance.

In prosecution of the cross-appeal they so gave notice of below, Mrs. Charpiot and Mrs. Norman, becoming, accordingly, appellants as against the other parties hereto, complain of the trial court's findings and holdings through five points of error, the substance of which is this:

(1) Federal estate taxes and State additional taxes upon the transfer of the testator's estate are not "debts" within the provision of his will, "that his just debts be paid";

(2) The exchange of U. S. Gov. Savings Bonds for cash, to pay testator's debts, did not entitle his executor to commissions under Articles 3689 and 3690, R.C.S., Vernon's Ann.Civ.St. arts. 3689, 3690;

(3) Paragraph Sixth of the testator's will, presaging a possible change in the nature of the property devised to these two appellants, did not prevent it from passing —in its actually changed form—to them;

(4) and (5) The court's finding that the U. S. Savings Bonds, as well as some certificates of time deposits, "were purchased with funds of his not shown to have been moneys received by him for or in lieu of royalties on the minerals referred to in the sixth paragraph of his will", was not supported by any evidence; or, it was so against the great weight of the evidence as to have been wrong.

None of these presentments, it is determined, should be sustained.

 After its review of the record, this court is unconvinced that the trial court erred in holding the use of the word "debts" to include Federal estate taxes, since, under the holdings of the courts generally, such taxes appear to be properly chargeable against a testator's estate, regardless of whether they are called "debts", "expense", "obligation", or "costs of administration". Moreover, there is in the record sufficient evidence to support the trial court's finding and conclusion in this instance that the testator did intend the word "debts" to include any and all obligations due and owing by his estate, and taxes are debts within the purview of the probate laws of Texas.

In the next place, the court's allowance of commissions to the executor on the sale of government bonds for the purpose of paying debts and taxes of the estate did not constitute "cash money on hand", and that finding has not been attacked by these appellants; wherefore, the consequent ruling upon the right of the executor to such commissions would seem to have followed as a matter of course.

From the record as a whole, it further clearly appears that the trial court did not err in holding that it was not the intention of the testator that his two daughters should receive the minerals, or moneys, accruing from his property, prior to his death, and that the testator's will was intended to speak only from the date of his death; moreover, regardless of whether or not such was the intention of the testator, the record supported, if indeed it did not compel, the court's further finding that the funds and moneys received by the testator from his rents and royalties had been so intermingled by him with other funds, moneys, and properties in his bank-accounts, as that they could not have been identified nor otherwise been susceptible of apportionment to these appellants.

Without further discussion, the judgment will be affirmed.

Affirmed.