TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-02-00129-CV






Reagan National Advertising of Austin, Inc., Appellant


v.


Capital Outdoors, Inc., Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT

NO. GN102436, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING






 Reagan National Advertising of Austin, Inc. ("Reagan") appeals the trial court's order
denying its motion for summary judgment and granting summary judgment in favor of Capital
Outdoors, Inc. ("Capital"). Capital bought an advertising easement from Met NYTEX, Ltd. ("Met")
and built an outdoor advertising billboard on Met's property. Reagan is a former lessee of Met and
formerly maintained a billboard on the same land. The lease agreement between Reagan and Met
contained a clause prohibiting Met from "releasing" the land to other advertisers for five years after
the lease's termination. According to Reagan, this lease clause prohibits Met from conveying, not
just from leasing, the property to other advertisers. 

 In this suit, Reagan attempts to enforce the clause against Met's grantee, Capital. 
Because the lease clause is not enforceable against Capital, and because neither Met nor Capital
violated its terms by entering an easement agreement, we will affirm the judgment of the trial court. 


BACKGROUND

 Reagan leases more than nine hundred outdoor billboard faces in Austin and the
surrounding area. This gives it control of more than eighty percent of the local billboard market. 
In Austin, this dominant market share is particularly valuable because of the City's restrictions on
billboard construction.

 The City prohibits the use of off-premise billboards. (1) Austin, Tex. Code of
Ordinances § 25-10-102 (2002). But billboard sites that were already operating when this
prohibition was enacted have been "grandfathered" and can retain their signs. See id. § 25-10-152(A). The City also regulates the replacement of signs at these grandfathered sites. To replace
a billboard: (1) the City must receive a replacement permit application before the existing billboard
is removed, (2) the replacement billboard must be at least twenty-five percent smaller than the
existing billboard, and (3) the replacement billboard must be erected within ninety days of the
existing billboard's removal. Id. § 25-10-152(D), (B)(5)(c)(iii). A property owner who does not
erect a new billboard within ninety days of an existing billboard's removal forfeits this valuable
grandfathered property right. See id. § 25-10-152(D)(2); see also Reagan Nat'l Adver. v. Vanderhoof
Family Trust, 82 S.W.3d 366, 368 (Tex. App.--Austin 2002, no pet.).

 Met owns a grandfathered site. On May 1, 1998, it leased its site to Reagan for a
renewable one-year term. The lease agreement includes a clause prohibiting Met from "releasing"
the site to other advertisers for five years if it fails to renew with Reagan:


In the event this lease is not renewed or cancelled, lessor agrees that he will not for
a period of five years subsequent to the date of termination, release said premises to
any other advertiser other than lessee for advertising purposes.



 Reagan maintained a billboard at the site for the next three years. When Met decided
not to renew for a fourth term, Reagan reminded it of the restrictive lease clause. Met nevertheless
refused to renew the lease. Reagan eventually removed its billboard.

 Approximately two months before the lease with Reagan expired, Met sold Capital
an easement allowing it to build and maintain a billboard on the site. The granting instrument
explicitly makes the easement both perpetual and assignable. It also states that Met does not warrant
title to the site against claims that Reagan might make under the lease. Capital has since built and
is currently maintaining a billboard on the site.

 The day after its lease expired, Reagan filed a lawsuit against the City in federal court. 
Reagan claimed the City had misconstrued its own ordinances by issuing billboard replacement
permits to third parties. It argued that the signs themselves, not the sites, were grandfathered, and
that the City had taken Reagan's property without compensation by issuing replacement permits to
Reagan's competitors. The federal court dismissed the suit for failure to state a claim, explaining
that Reagan retains no property interest in a site once its lease expires. 

 Reagan then filed a state-court lawsuit against Met. In that suit, Reagan sought
temporary and permanent injunctions barring Met from conveying or "complying with any
agreement authorizing the conveyance . . . [of] the property subject to the Lease . . . between Reagan
and Met." The district court denied Reagan's request for a temporary injunction. Reagan then
nonsuited and filed this lawsuit against Capital.

 In this lawsuit, Reagan seeks to enforce the lease clause against Capital. It asked the
trial court to declare that the clause is enforceable against Capital and to issue an injunction
prohibiting Capital from utilizing the site for advertising purposes. Both parties filed motions for
summary judgment. The trial court denied Reagan's motion and granted Capital's.


DISCUSSION

 Because the propriety of a summary judgment is a question of law, we review the trial
court's decision de novo. Natividad v. Alexsis, Inc., 875 S.W.2d 695, 699 (Tex. 1994); Texas Dep't
of Ins. v. American Home Assurance Co., 998 S.W.2d 344, 347 (Tex. App.--Austin 1999, no pet.). 
The standards for reviewing a motion for summary judgment are well established: (1) the movant
for summary judgment has the burden of showing that no genuine issue of material fact exists and
that it is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material
fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true;
and (3) every reasonable inference must be indulged in favor of the nonmovant and any doubts
resolved in its favor. Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548-49 (Tex. 1985). When
the trial court grants one party's motion for summary judgment and denies the other, we review both
motions and if we find the trial court erred, we will reverse and render the judgment the trial court
should have rendered. See Bradley v. State ex rel. White, 990 S.W.2d 245, 247 (Tex. 1999).

 In its motion for summary judgment, Capital claims that granting an easement does
not violate the restrictive lease provision, which prohibits only "releasing" the premises. Capital also
claims that the lease provision is an unenforceable restraint on alienation of real property. We agree,
and will affirm the summary judgment on both grounds. 

 Reagan's claim that Met violated the lease provision turns on an unnaturally broad
reading of the word "release." Restrictive covenants are subject to the normal rules of contract
construction. Pilarcik v. Emmons, 966 S.W.2d 474, 478 (Tex. 1998). In interpreting a restrictive
covenant, we seek the objective intent of its drafters. Hodas v. Scenic Oaks Prop. Ass'n, 21 S.W.3d
524, 528 (Tex. App.--San Antonio 2000, pet. denied); see also Wilmoth v. Wilcox, 734 S.W.2d 656,
658 (Tex. 1987). We do not find this intent by looking at isolated words or phrases; instead, we
examine the entire context of the instrument. See Crispin v. Paragon Homes, 888 S.W.2d 78, 81
(Tex. App.--Houston [1st Dist.] 1994, writ denied); Bright v. Grey, 377 S.W.2d 223, 225 (Tex. Civ.
App.--Beaumont 1964, no writ). Doubts about the meaning of a covenant should be resolved
against the party seeking to enforce it and in favor of the unrestricted use of land. Wilmoth, 734
S.W.2d at 657; Davis v. Skipper, 83 S.W.2d 318, 321 (Tex. 1935). (2)

 Reagan seeks to construe the lease clause in isolation. It ignores the fact that the
instrument containing the clause is itself a commercial lease agreement. But this very fact makes
the meaning of the clause unmistakable. If Reagan intended to prohibit Met from conveying the site
to other advertisers, it would not have used the word "release" when it drafted the agreement. 
Neither Met nor Capital violated the restriction on releasing the site. Met conveyed an easement to
Capital. It did not lease the property.

 There is no doubt about the meaning of the clause, but if there were, Reagan would
ask that we not resolve that doubt in favor of unrestricted use of land. Instead, Reagan would have
us resolve any doubt in a way that totally destroys Met's grandfathered rights in the billboard site. 
We decline to do so. But the infirmity of Reagan's broad reading of the clause is even more serious. 
If Reagan's construction were correct, the clause would be void as an unreasonable restraint on
alienation.

 The rule prohibiting unreasonable restraints on alienation of real property is well
established in Texas. See, e.g., Sonny Arnold, Inc. v. Sentry Sav. Ass'n., 633 S.W.2d 811, 813 (Tex.
1994); Crestview, Ltd. v. Foremost Ins. Co., 621 S.W.2d 816, 823 (Tex. Civ. App.--Austin 1981,
writ ref'd n.r.e.). Texas courts often look to the Restatement of Property for guidance in deciding
whether a restraint on alienation exists. See, e.g., Sonny Arnold, 633 S.W.2d at 813. Because
Reagan's interpretation would impose contractual liability on Met for attempting to convey its site,
and would terminate the property interest that Met conveyed to Capital, it falls squarely within the
Restatement's definition of a restraint on alienation:


A restraint on alienation, as that phrase is used in this Restatement, is an attempt by
an otherwise effective conveyance or contract to cause a later conveyance . . . 


(b) to impose contractual liability on the one who makes the later conveyance when
such liability results from a breach of an agreement not to convey; or


(c) to terminate or subject to termination all or part of the property interest
conveyed. 



Restatement (First) of Prop. § 404 (1944).

 In deciding whether the restraint is unreasonable, the case of Baker v. Henderson, 153
S.W.2d 465 (Tex. 1941), is instructive. In Baker, neighborhood landowners sued to enjoin another
landowner from building a home on his corner lot. They claimed that deed restrictions prohibiting
building "closer than 75 feet to the property line fronting on any street adjoining said premises"
required him to set his home back seventy-five feet from each of the two streets that abutted his
property. Id. at 469. Under the plaintiffs' interpretation, the lot was too small for the landowner to
build a home. To "save the conveyance from being void," the Baker court held that the restriction
applied to only one of the streets abutting the land. Id. at 471.

 Reagan claims that because the lease clause restricts only use of the site, and not its
conveyance, it is not an unreasonable restraint on alienation. It reasons that Met is free to convey
its site so long as its grantees do not use it for advertising purposes for five years. But Reagan's
argument ignores the fact that under the City ordinances, its interpretation of the lease clause would
destroy Met's grandfathered property right to erect a billboard on that site. Reagan's interpretation
of the clause is akin to the Baker plaintiffs' interpretation of the deed restrictions. Had the plaintiffs
prevailed in that case, the landowner could still use his residential property, but he was prohibited
from building a home on it.

 Reagan's construction of the lease clause is too broad and would create an
unreasonable restraint on alienation were we to adopt it. Capital's motion for summary judgment
was therefore properly granted.

 In addition to arguing that the trial court erred by granting Capital's motion for
summary judgment, Reagan claims that the trial court should not have denied its motion. Reagan's
entire case turns on its claim that it can enforce the lease clause against Capital, and the bulk of its
motion for summary judgment argues this point. Reagan contends that the lease clause creates an
equitable servitude enforceable against any grantee of Met who takes with notice. We disagree.

 Parties to a covenant restricting the use of land may always enforce it among
themselves under general contract principals. See Evans v. Pollock, 793 S.W.2d 14, 19 (Tex.
App.--Austin 1989), rev'd on other grounds, 796 S.W.2d 465 (Tex. 1990). The same is not true
of their successors in title. See Davis, 83 S.W.2d at 321-22. A restrictive covenant can bind a
successor to the burdened land in two ways: as a covenant that runs with the land at law, or as an
equitable servitude. Collum v. Neuhoff, 507 S.W.2d 920, 922 (Tex. Civ. App.--Dallas 1974, no
writ).

 Reagan does not argue that the lease clause creates a covenant that runs with the land,
and its claim that the clause creates an equitable servitude lacks merit. (3)

 For a covenant to run with the land, several technical requirements not present here
must be met. See generally Howard R. Williams, Restrictions on the Use of Land: Covenants
Running with the Land at Law, 27 Tex. L. Rev. 419 (1949). But a covenant that does not technically
run with the land can still bind successors to the burdened land as an equitable servitude if: (1) the
successor to the burdened land took its interest with notice of the restriction, Collum, 507 S.W.2d
at 922-23; (2) the covenant limits the use of the burdened land, Clear Lake City Water Auth. v. Clear
Lake Util., 549 S.W.2d 385, 388 (Tex. 1977); and (3) the covenant benefits the land of the party
seeking to enforce it, Davis, 83 S.W.2d at 321-22. See also Baker, 153 S.W.2d at 469; McCart v.
Cain, 416 S.W.2d 463, 465 (Tex. Civ. App.--Fort Worth 1967, writ ref'd n.r.e.) (both holding that
equitable servitudes require a benefitted estate in land).

 The lease clause cannot be enforced against Capital as an equitable servitude because
Reagan owns no land that benefits from the restriction. In Davis v. Skipper, the Texas Supreme
Court said of equitable servitudes:


The existence of an "easement" or "equity" in a tract of land growing out of a
restrictive covenant as to use can hardly be conceived except in connection with
another tract of land, which may be said to be the dominant estate and for which the
easement or equity is created. In every case where parties seek to enforce a
restrictive covenant, the burden of proof is upon them to establish that the covenant
was imposed on defendant's land for the benefit of land owned by them. It is also
well settled that in the absence of proof that a restriction was imposed for the benefit
of other land, it is construed as a personal covenant merely with the grantor.



Davis, 83 S.W.2d at 321-22. We agree with the Davis court that it is difficult to conceive of an
equitable servitude except in connection with a benefitted tract of land for which the servitude was
created. The law allows upstream land-use agreements to burden downstream property
owners--whether the burden is enforced as an equitable servitude or a covenant that runs with the
land--primarily because of the benefits such agreements bestow on other lands. See Pierson v.
Canfield, 272 S.W. 231, 233 (Tex. Civ. App.--Dallas 1925, no writ); cf. Davis, 83 S.W.2d at 321-22.

 Reagan presents us with a very different picture of the law. It claims that all
covenants restricting the use of real property fall into one of two categories: (1) covenants that run
with the land and (2) personal covenants. It then claims that all personal covenants are enforceable
by the original party against both the other original party and anyone who took the burdened land
with notice of the restriction.

 To support this claim, Reagan cites to language in Collum v. Neuhoff and other cases
that seems to equate personal covenants with equitable servitudes: 


The Texas authorities have long recognized the distinction between "real" and
"personal" covenants. Those in the first category are said to run with the land at law,
while a "personal" covenant is often referred to as an equitable "reservation" or
"servitude" which may be binding on successors in interest even though the
traditional legal test of Spencer's case . . . are not met.



Collum, 507 S.W.2d at 922. Collum then emphasizes that "[t]he key to enforceability of equitable
covenants against subsequent owners is the fact that they took with notice of the covenant or
servitude." Collum, 507 S.W.2d at 922-23; see also Frey v. Decordova Bend Estates Owners Ass'n,
632 S.W.2d 877, 879 (Tex. App.--Fort Worth 1982) (citing Collum), aff'd, 647 S.W.2d 246 (Tex.
1983). 

 We read Collum to mean that personal covenants may be enforceable as equitable
servitudes so long as all the requirements are met, chiefly notice to the successor to the burdened
land. Collum could not, and does not purport to, change Davis's requirement that--unless the parties
are in privity of contract--a personal covenant cannot be enforced by one who does not own
benefitted land.

 Reagan's interpretation of this caselaw is in error. By equating equitable servitudes
with personal covenants, Reagan implies that only the original benefitted party can enforce an
equitable servitude. But it is well established that the benefit, as well as the burden, of an equitable
servitude can run to successors in title. See Ortiz v. Jeter, 479 S.W.2d 752, 759 (Tex. Civ.
App.--San Antonio 1972, writ ref'd n.r.e.). Reagan's interpretation also forces it to claim that the
Davis court is actually writing about real covenants instead of equitable servitudes in the above
quoted passage. 

 The lease clause in question only gave Reagan contract rights against Met. It did not
create an equitable servitude that binds Capital. Reagan's motion for summary judgment was
therefore properly denied.

 Reagan also argues that the trial court should not have awarded attorney's fees to
Capital in the amount of $21,471.54. Specifically, Reagan claims that because Capital did not
present proof of the reasonableness and necessity of its attorney's fees, there was no evidence to
support the award. Because Reagan raises this argument for the first time on appeal, we conclude
that it has not preserved the issue and we will not address its merits. See Tex. R. App. P. 33.1(a).

 To preserve a complaint for appellate review, a party must have presented its
complaint to the trial court "by a timely request, objection, or motion that stated the grounds for the
ruling that the complaining party sought . . . with sufficient specificity to make the trial court aware
of the complaint." Id. Where the objection at trial is not the same as the complaint presented on
appeal, the complaint is not preserved for appellate review. See Rogers v. Stell, 835 S.W.2d 100,
101 (Tex. 1992).

 At the hearing on attorney's fees, Reagan made only one objection. When Capital
attempted to introduce into evidence pleadings and orders from other lawsuits in which Reagan was
involved, Reagan objected on the grounds of hearsay and relevancy. Capital responded by offering
the pleadings not for their truth but for the limited purpose of showing that Reagan was involved in
numerous disputes. The trial court admitted the evidence for the limited purpose and signed the final
judgment form. Reagan made no further objections.

 Reagan's sole objection to Capital's evidence did not raise the complaint Reagan now
asserts on appeal and is not sufficient to preserve error. See, e.g., Holland v. Hayden, 901 S.W.2d
763, 765 (Tex. App.--Houston [14th Dist.] 1995, writ denied) (motion for new trial alleging no
evidence or insufficient evidence to support award of attorney's fees did not preserve complaint that
judgment improperly awarded attorney's fees twice). At the hearing, Reagan never complained that
there was no evidence or insufficient evidence to support an award of attorney's fees. Moreover, the
record does not indicate that Reagan filed a motion for a new trial or any other post-judgment motion
bringing to the trial court's attention its sufficiency complaint. Because Reagan did not afford the
trial court the opportunity to correct its alleged mistake, the error was not preserved for appellate
review. Id.


CONCLUSION


 We overrule Reagan's issues and affirm the trial-court judgment.



 

 Bea Ann Smith, Justice

Before Justices Kidd, B. A. Smith and Yeakel

Affirmed

Filed: October 24, 2002

Publish
1. An off-premise sign is a sign advertising something "not located on the site where the sign
is installed, or that directs persons to any location not on that site. Austin, Tex. Code of Ordinances
§ 25-10-3(7) (2002). Reagan deals primarily in off-premise signs.
2. The Texas Property Code requires that "[a] restrictive covenant shall be liberally construed
to give effect to its purposes and intent." Tex. Prop. Code Ann. § 202.003(a) (West 1995). This
provision does not conflict with the longstanding common-law rule that if there is ambiguity or
doubt as to the drafter's intent, a covenant is to be strictly construed against the party seeking to
enforce it and in favor of the free and unrestricted use of land. See Munson v. Milton, 948 S.W.2d.
813, 816 (Tex. App.--San Antonio 1997, pet. denied).
3. In its brief, Reagan does argue that the covenant runs with the land, but in its motion for
summary judgment, Reagan relied only on an equitable servitude theory: "[T]he present covenant
is a 'personal covenant.' As such, it does not need to meet elements required of a covenant running
with the land and is enforceable by Reagan against all those who take with notice." In any case, the
lease clause does not meet the many technical requirements for a covenant to run with the land.