NO. 07-05-0135-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



MAY 18, 2006



______________________________


 

FIRST PERMIAN, L.L.C. AND


ENERGEN RESOURCES COMPANY, APPELLANTS



V.



JAMES P. GRAHAM, APPELLEE


_________________________________



FROM THE 286TH DISTRICT COURT OF COCHRAN COUNTY;



NO. 02-12-3789; HONORABLE HAROLD PHELAN, JUDGE


_______________________________




Before REAVIS and CAMPBELL and HANCOCK, JJ.

OPINION


 Appellants, First Permian, L.L.C., and Energen Resources Company, appeal the trial
court's entry of judgment nothwithstanding the verdict in favor of appellee, James P.
Graham. We reverse and render.



Factual Background

 In 1963, J. Frank Graham, Sr., J. Frank Graham, Jr., Robert S. Graham, Betty Jo
Graham Finn, and Mary Jane Graham Robertson (Grahams) assigned 100 percent of their
interest in certain oil and gas leases located in Cochran County, Texas to Pan American
Petroleum Corporation (Pan American). The assignment provided for an immediate
payment of $100,000 by Pan American to the Grahams, the receipt of which was
acknowledged. Additional terms of the assignment, which are important to the discussion
herein include:


 Paragraph 2-Reserved to the Grahams a production payment of $400,000 plus 5½
percent interest per annum, calculated monthly on the decreasing balance.
 Paragraph 2(f)-Upon full payment of the production payment reserved to the
Grahams, the interest reserved was to cease and terminate and, ipso facto, vest in
Pan American.
 Paragraph 5-Subject to the rights previously reserved in the assignment, the
reservation to the Grahams of a preferential right to match any bona fide offer to
purchase the leases accepted by Pan American.
 Paragraph 9-Terms of the assignment bound the heirs, successors or assignees of
both the Grahams and Pan American.



In 1967, the leases involved herein were unitized as part of the Whiteface unit. The
Grahams ratified the formation of the unit. The production payment called for in paragraph
2 of the assignment was paid out in 1975. 

 Subsequently, there were a series of assignments of the interest initially held by Pan
American. Ultimately, First Permian, L.L.C. (First Permian), obtained the interests. Notice
of each of these assignments was given to the Grahams pursuant to the preferential right
they retained in Paragraph 5 of the original assignment. First Permian offered its assets
for sale to prospective bidders in 2002. The assets contained the leases originally held
by the Grahams. Notices were sent to all holders of preferential rights in all of the First
Permian's assets, including the Grahams. Appellee, James P. Graham (James), is the son
of Robert S. Graham. After receiving First Permian's notice of proposed sale of the leases,
James sent a letter to First Permian on April 2, 2002, informing First Permian that he was
considering exercising his preferential right, but needed additional information from First
Permian. 

 Ultimately, the bid of Energen Resources Company (Energen) was determined to
be the winning bid. Energen's purchase of First Permian's assets was completed on April
8, 2002. On April 10, 2002, Energen's title attorney sent a letter to James advising him that
he had concluded that the preferential right held by the Grahams, resulting from the
assignment of 1963, had expired with the final payout of the production payment in 1975. 
On this basis the letter purported to revoke any notice of preferential right to purchase
previously sent to him. James then filed this lawsuit.

Procedural Background


 James filed suit against both First Permian and Energen. As to First Permian,
James alleged breach of contract, specifically alleging that First Permian failed to abide by
the terms of the preferential right paragraph of the 1963 assignment. As to Energen,
James alleged that they tortiously-interfered with James's preferential right and were,
therefore, liable for damages. James requested relief by specific performance enforcing
his preferential right to purchase the leases involved and for damages for the oil removed
from the lease properties since the sale to Energen. First Permian and Energen
counterclaimed seeking a declaratory judgment that the Grahams' preferential right expired
when the production payment was paid out. First Permian and Energen also moved for
summary judgment claiming that the preferential right ceased, as a matter of law, when the
production payment was completed. The trial court denied the motion. 

 The case proceeded to trial. At the close of James's case in chief, the trial court
granted Energen's directed verdict as to James's tortious-interference claim. At the close
of trial, the jury answered all submitted fact questions adverse to James. James filed a
motion for judgment notwithstanding the verdict alleging, that as a matter of law, First
Permian had breached the preferential right provision of the assignment. The trial court
granted James's motion and entered judgment against both First Permian and Energen,
ordering that they convey the leases in question to James. Further, the court ordered that
James recover the profits realized from the property since the sale to Energen, pre and
post judgment interest, attorneys fees and cost of court. It is from this judgment that First
Permian and Energen appeal. 

 First Permian and Energen present five issues on appeal. Four of the five deal with
the preferential right contained in paragraph 5 of the 1963 assignment. The fifth issue
deals with the award of damages and equitable relief, against Energen, after the directed
verdict against James on his tortious-interference claim. The first issue, as presented by
First Permian and Energen in their motions for summary judgment and directed verdict,
claims that the preferential right involved herein was a covenant that ran with the land and,
as such, the right terminated when the Grahams' interest in the land ceased. We agree
with First Permian and Energen and, therefore, will reverse.

Preferential Rights


 All parties to this appeal agree that the 1963 assignment of the Grahams' lease
interest contained a preferential right for the Grahams' to match any bona fide offer that the
assignee, Pan American, accepted. The assignment also identified the notification required
to be given to the Grahams. Likewise, all parties to this appeal agree that the preferential
right created by the assignment is in the nature of a covenant that runs with the land. 
Additionally, all parties agree that the assignment provided for a production payment to the
Grahams until the sum of $400,000 plus interest, at the rate of five and one-half (5 ½)
percent per annum on the unpaid balance, was fully paid. Finally, there is no disagreement
that the 1963 assignment contained a paragraph making the terms of the assignment
binding upon and inuring to the benefit of the respective heirs, successors, and assigns of
both the assignor and assignee. The disagreement is about the proper interpretation to be
given these respective paragraphs in the 1963 assignment. 

 James points out that paragraph 5, the preferential right paragraph, does not contain
any provision terminating the preferential right upon completion of the production payment. 
Further James argues that paragraph 2, the production payment paragraph, contains no
clause specifically connecting the preferential right and the production payment. 
Additionally, James points to the fact that the assignment contains, in Paragraph 9, a
provision that the obligations and rights created by the assignment would be binding on and
inure to the benefit of the heirs, survivors, and assignees of either party to the assignment. 
Interpreting these provisions together, James contends that the preferential right is a
separate and independent covenant that was not terminated by pay out of the production
payment. 

 Our first task is to construe the contract in light of the record before us. An appellate
court reviews a trial court's construction of a contract de novo. Security Savings Ass'n v.
Clifton, 755 S.W.2d 925, 931 (Tex.App.-Dallas 1988, no writ). A court must interpret a
contract based upon the true intentions of the parties. SAS Institute, Inc. v. Breitenfeld, 167
S.W.3d 840, 841 (Tex. 2005). No single provision taken alone will be given controlling
effect; rather, all provisions must be considered with reference to the whole instrument. Id.

 Applying our rules for construction of a contract to the facts before us, the following
becomes clear:

 1. The total purchase price of the Grahams' leases was $500,000, of which 
$100,000 was paid at the time of the assignment's execution;

 2. The balance of the cost of the leases, $400,000 was financed at the rate of 
 five and one-half (5 ½ ) percent per annum on the unpaid balance;

 3. The production payment was to pay for the financed portion of the purchase price
of the leases;

 4. When the $400,000 plus interest was paid, the interest reserved by the 
Grahams would terminate and the same would vest in Pan American.


Considering the assignment as a whole and giving effect to all of its provisions, the
interpretation urged by James must be rejected. Rather than creating an independent 
preferential right for the Grahams' heirs, successors, and assigns to enjoy forever, the
preferential right was intended to exist only so long as necessary to protect the interest of
the Grahams, their heirs, successors, or assigns in the full payment for the leases. This
is the only construction that gives full meaning to all of the provisions of the assignment. 
Id.

 Having determined that the preferential right was tied to the production payment, the
next issue becomes what effect the completion of the production payment would have on
the preferential right according to the assignment. To understand this the nature of a
preferential right must be ascertained. All parties agree that the preferential right involved
in this case is a real covenant. As such the preferential "right runs with land" if it touches
and concerns the land; relates to a thing in existence or specifically binds the parties and
their assigns; is intended by the original parties to run with the land; and when the
successor to the burden has notice. Inwood North Homeowners Ass'n, Inc. v. Harris, 736
S.W.2d 632, 635 (Tex. 1987). By contrast, personal covenants bind only the actual parties
to the covenant and those who purchase the land with notice of the restrictive covenant,
if the restrictions concern land or its use. Tarrant Appraisal Dist. v. Colonial Country Club,
767 S.W.2d 230, 235 (Tex.App.-Fort Worth 1989, writ denied). 

 As a real covenant, the preferential right is subject to Texas law governing real
covenants. First, a real covenant endures only so long as the interest in land to which it
is appended. Talley v. Howsley, 170 S.W.2d 240, 243 (Tex.Civ.App.-Eastland 1943), aff'd,
176 S.W.2d 158 (Tex. 1943). Second, a real covenant can only be enforced by the owners
of the land the covenant was intended to benefit. Davis v. Skipper, 125 Tex. 369, 83
S.W.2d 318, 321 (1935). 

 James contends that McMillan v. Dooley, 144 S.W.3d 159 (Tex.App.-Eastland 2004,
pet. denied), has changed this requirement. However, the facts of the McMillan case are
significantly distinguishable from the present case. The court in McMillan concluded that
the covenant was a real covenant. However, upon closer examination, the McMillan
covenant had significantly more of the characteristics of a personal covenant. The facts
of McMillan show that the parties, at the time of execution of the agreement in question, did
not intend that Johnson would be required to have an interest in the land to support the
enforcement of his preferential right. Rather, the parties intended that Johnson have a
personal right to enforce the covenant. Therefore, the covenant in McMillan does not
possess all four of the requirements of a covenant running with the land, but rather
constituted a personal covenant. See Inwood, 736 S.W.2d at 635. This is the only Texas
case cited by James that supports the proposition that a real covenant that runs with the
land can be enforced by a party that does not have an existing interest in the land the
covenant was created to benefit. James cites the court to Sanchez v. Dickinson, 551
S.W.2d 481, 485 (Tex.App.-San Antonio 1977, no writ), for the proposition that a
preferential right is a covenant running with the land. This is a true statement, as agreed
by all parties to this litigation, however, in Sanchez, the party attempting to enforce the
covenant was the owner of an interest in the land. Dickinson still owned the original 791.21
acre tract the covenant was intended to benefit. Likewise, in the case of Stone v. Tigner,
165 S.W.2d 124, 127 (Tex.Civ.App.-Galveston 1942, writ ref'd), the holder of a right of first
refusal was allowed to enforce his right of first refusal to purchase the land in question
because he owned a valid lease in the land. James also cites this court to Westland Oil
Development Corp. v. Gulf Oil Corp., 637 S.W.2d 903 (Tex. 1982), for the proposition that
a covenant can run with the land based simply on a burden on the covenantor's land that
renders the land less valuable. This is a true statement, but in addition to that, the party
seeking to enforce the covenant, Westland, still retained an interest, a 1/16 of 8/8
overriding royalty interest, in lands earned pursuant to the farmout agreement. Id. at 905. 
Accordingly, we do not find the McMillan case controlling in the present fact situation.

 When this body of law is applied to the facts before us, it is apparent that James did
not have a current interest in the estate to which the preferential right would have
appended. The rights his predecessors in interest, the Grahams, held were terminated with
the payment of the final production payment in 1975. Accordingly, as a matter of law,
James had no preferential rights to the property subject to the 1963 assignment of lease. 

Conclusion 


 Having determined that James had no preferential right, we reverse the judgment
of the trial court and, pursuant to Texas Rule of Appellate Procedure 43.3, enter the
judgment that the trial court should have rendered. Therefore, we render judgment that
James take nothing by his suit. As our resolution of the First Permian's and Energen's first
issue is all that is necessary to dispose of this appeal, we will not address the other issues
raised. See Tex. R. App. P. 47.1.


 Mackey K. Hancock

 Justice